IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAYSHAWN BATISTE,<br>    *Plaintiff*, | §<br>§<br>§<br>§<br>§ | |
| v. | §<br>§<br>§<br>§ | CIVIL ACTION NO. |
| CHIEF TROY FINNER, Individually<br>SGT. D. RUSSELL, Individually<br>OFFICER F. RAHIMZADEH, Individually<br>OFFICER G.R. GREENLEA, Individually<br>OFFICER C. DONOVAN, Individually<br>THE CITY OF HOUSTON,<br>                    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, RAYSHAWN BATISTE complaining of THE CITY OF HOUSTON, TEXAS; CHIEF TROY FINNER, *Individually;* SGT. D. RUSSELL*, Individually;* OFFICER F. RAHIMZADEK, *Individually;* OFFICER G. R. GREENLEA, *Individually; and* OFFICER C. DONOVAN, *Individually,* and will show the Court the following:

### I. INTRODUCTION

1. This is an action for Constitutional violations and state law claims suffered by Plaintiff as a result of the unreasonable search and seizure of Plaintiff. Plaintiff brings this action for compensatory damages under 42 U.S.C. § 1983 because Defendants jointly and severally deprived Plaintiff of his federally-protected right to be free from an unreasonable search and seizure. U.S. CONST. amends. IV, XIV.

1

2. Plaintiff bring this action through 42 U.S.C. § 1983 and § 1988.

3. As a direct result of the policies, practices, customs and procedures of the City of Houston ('Houston'), Plaintiff was intentionally deprived of his constitutional right to be free from unreasonable searches and seizures guaranteed to him by the Fourth Amendment to the United States Constitution. Defendants Deputy Kevin Mason and Deputy Johnny Reyes, peace officers acting in the course and scope of their employment with The Houston Police Department, Texas, and acting under color of state law, unjustifiably detained, searched and seized Plaintiff's person and property under circumstances where no reasonable police officer would have done so. Under long established law on violating constitutional rights, Deputy Kevin Mason and Deputy Johnny Reyes are not entitled to qualified or other immunity for these actions.

## II. JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution. This court has jurisdiction over Plaintiff's claim under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1343(3) (civil rights). This court further has jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (supplemental jurisdiction) as those claims form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court, under 28 U.S.C. § 1391(b) because the incident at issue took place in Harris County, Texas within the United States Southern District of Texas.

## III. PARTIES

6. Plaintiff, Rayshawn Batiste is an individual who lives in Houston, Texas.

2

7. Defendant CITY OF HOUSTON, TEXAS, is a municipality existing under the laws of the State of Texas and situated mainly in Harris County, Texas in the U.S. Southern District of Texas and  can be served with process by serving the City of Houston Secretary at 901 Bagby, Houston, TX 77012.

8. Defendant CHIEF TROY FINNER (hereinafter, "Chief Finner"), *Individually,* is sued in his individual capacity and can be served with process at 1200 Travis Street, Houston, TX 77002 or wherever he is found.

9. Defendant, SGT. D. RUSSELL, payroll #101599, (hereinafter, "Sgt. Russell"), *Individually,* at all times relevant was a Houston police officer and is sued in his individual capacity and can be served with process at 1200 Travis Street, Houston, TX 77002 or wherever he may be found.

10. Defendant, Officer F. RAHIMZADEK, payroll #163908, (hereinafter, "Rahimzadek"), *Individually,* at all times relevant was Houston police officer and is sued in her individual capacity and can be served with process at 1200 Travis Street, Houston, TX 77002 or wherever he may be found.

11. Defendant, Officer G. R. GREENLEA, payroll #163405 (hereinafter, "Greenlea"), *Individually,* at all times relevant was Houston police officer and is sued in his individual capacity and can be served with process at 1200 Travis Street, Houston, TX 77002 or wherever he may be found.

12. Defendant, Officer C. DONOVAN, payroll #162509, hereinafter, "Donovan"), *Individually,* at all times relevant was a Houston police officer and is sued in his individual capacity and can be served with process at 1200 Travis Street, Houston, TX 77002 or wherever he may be found.

## IV. FACTS

13. On February 2, 2022, Officers of the City of Houston Police Department were conducting an undercover narcotics operation at the Lucky Store located at 8900 S. Braeswood Blvd., Houston, 77074. An undercover officer approached a male in front of the store and asked him if he could get her some "hard." Hard is a street name for crack cocaine. The male responded in the affirmative and the undercover officer gave the male a marked twenty-dollar bill. The male entered the store and according to the undercover officer, she saw the male briefly speak to another male, later identified as Rayshawn Batiste, in the store. Rayshawn Batiste had entered the store before the undercover officer arrived in front of the store. After buying some snacks, Rayshawn Batiste left the store and was walking toward his residence. Soon thereafter, the first male exited the store and gave crack cocaine to the undercover officer. The undercover officer communicated to the surveillance marked unit officers to move in and detain the first male and Rayshawn Batiste.

14. Rayshawn Batiste had stopped walking because he was looking to see what was going at the store with all of the police vehicles arriving. An officer called out to Rayshawn Batiste for him to come to him. The officer walked to Rayshawn Batiste and detained him. Rayshawn Batiste was handcuffed and walked back to the store to a marked police vehicle. Rayshawn Batiste was searched for minutes. His shoes were removed, his pockets were searched, his belongings were seized and his genitals and buttocks were searched. Rayshawn Batiste's genitalia and buttocks can clearly be seen on the officer's body worn camera. Rayshawn Batiste was then placed in the back seat of the marked patrol vehicle.

15. The Houston police officers suspected that Rayshawn Batiste had the marked twenty-dollar bill on his person. The undercover officer never saw a hand-to-hand transaction between the

4

first male and Rayshawn Batiste. She could only see them from about the shoulder up from outside of the store because of the store shelves. Officers counted and looked through the cash Rayshawn Batiste had on his person for over twenty minutes searching for the marked bill. Eventually the Seargent pulled some papers from his pocket and told the officer searching through the cash a different serial number that should be on the marked bill. The officer then immediately found the marked bill in the cash according to the officer's body worn camera. Rayshawn Batiste was charged with Possession of a Controlled Substance and taken to jail.

16. On March 9, 2023, a jury trial commenced in the 178th District Court of The Houston Police Department, Texas. Defense counsel filed a motion to suppress the evidence because of an illegal detention, illegal search and illegal seizure of Rayshawn Batiste's person. The motion was carried along with the trial. Twelve jurors saw the body worn camera video of Rayshawn Batiste being searched.

17. The jury saw video footage of Rayshawn Batiste's penis, pubic hair and his buttocks. This same video also was seen by employees of the Houston Police Department and employees of the The Houston Police Department District Attorney's Office, as well as staff of the 178th District Court, including the presiding judge. After Defense counsel argued the motion to suppress to the Court, the judge found that the detention, search and arrest of Rayshawn Batiste was illegal and granted the motion to suppress evidence. The State immediately dismissed the case against Rayshawn Batiste.

18. HPD involved Officers intentionally and wrongfully subjected Rayshawn Batiste to public humiliation for over an hour and violated his rights under the Texas and United States Constitution.

5

## V. VIOLATION OF THE 4TH AND 14TH FOURTEENTH AMENDMENTS

19. Plaintiff incorporates all preceding paragraphs as if set fully set forth herein.

20. The Fourth Amendments guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV*. The 14th Amendment allows for due process of law. Such violations are actionable pursuant to 42 U.S.C. Section 1983 and 1988. Unreasonable searches include those that disrobe arrestees in public, absent an extremely compelling need on the part of law enforcement. *See Illinois v. Lafayette*,462 U.S. 640, 645 (1983), *Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001), *Starks v. City of Minneapolis*, 6 F.Supp.2d 1084, 1088 (D. Minn. 1998).

21. The force used by the individually named Defendants against Mr. Batiste was in great excess to the need to use such force, and the method of searching Mr. Batiste was an excessive and unreasonable method of search, which constituted both an unreasonable seizure and an unreasonable search of Mr. Batiste that violated his due process rights under the 14th Amendment. All individually named defendants witnessed or knew about the excessive force used against Mr. Batiste, and all individually saw the illegal search of Mr. Batiste and either directly participated or chose not to intervene to prevent the continued illegal search.

22. The City of Houston has a custom, policy, practice, and procedure of using excessive force on individuals and not disciplining or training officers adequately and is therefore liable under 42 U.S.C. Section 1983 and 1988. There is a pattern and practice of using excessive force, condoning excessive force, and keeping excessive force details and "investigations" quiet to hide the lack of

## ASSAULT

23. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

24. A defendants is liable for assault if

1. The defendant acted intentionally, knowingly, or recklessly.

2. The defendant made contact with the plaintiff's person.

3. The defendant's contact caused bodily injury to the Plaintiff.--See *Moore v. City of Wylie*, 319 S.W.3d 778, 782 (Tex.App.—El Paso 2010, no pet.). In an action for assault by offensive physical contact, the Plaintiff can recover actual damages for mental anguish even without showing physical injury. *Id.*

## MENTAL ANGUISH

25. Plaintiff incorporates all preceding paragraphs as if set fully set forth herein.

26. Mr. Lockett and his mother the Plaintiff suffered at least anxiety, fear, anger and depression because of the acts of the individually named defendants and the City of Houston and, therefore, and seeks damages for mental anguish as well as the pain and suffering, past and future, and other damages set forth above.

## PUNITIVE DAMAGES

27. Plaintiff incorporates all preceding paragraphs as if set fully herein.

28. The individually named defendants actions and inactions cause them to be liable for punitive damages as they were consciously indifferent to the Plaintiff's constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

## PLAINTIFF' S FIRST CLAIM: 42 U.S.C. § 1983- PEACE OFFICER LIABILITY

29. Plaintiff brings a claim against all Defendant Officers, individually as well as in their official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.

7

30. At all material times, all Defendant Officers were acting under color of state law as agents and employees of Defendant, the City of Houston. Defendants were wearing their official Houston Police Department uniforms, and were acting in the course and scope of their duties as City of Houston Police Officers on February 2, 2022, when they illegally detained, illegally searched, illegally seized and illegally arrested Rayshawn Batiste, violating his constitutional rights.

31. The facts and circumstances of this case show that Defendants' acts were a willful violation of Plaintiff's Constitutional rights.

32. Therefore, by using subjectively and objectively unreasonable actions while acting under color of municipal and state law, the involved Houston Police Officers violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and caused him harm and damages.

**PLAINTIFF'S SECOND CLAIM: 42 U.S.C. § 1983- MUNICIPAL LIABILITY**

33. The Houston Police Department and the City of Houston are also liable under 42 U.S.C. § 1983 for failing to supervise and train its officers, and for overlooking and covering up officer misconduct. In addition, the Houston Police Department has a general policy, pattern and/or practice of not appropriately disciplining officers for their misconduct, thereby sanctioning the officers' actions, which amounted to a departmental policy of overlooking constitutional violations. The Houston Police Department's failure to supervise and train its officers, and the Houston Police Department's willful blindness towards the constitutional violations committed by its employees, constitute gross negligence and/or deliberate and conscious indifference to people's rights, including the right to be free from unreasonable search and seizure and the

8

constitutional rights conveyed to Plaintiff as applied through 42 U.S.C. Sections 1983 and 1988.

34. Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if The Houston Police Department's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. See *Bd. of County Commis of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

35. In the present case, the Houston Police Department's formal and informal actions in overlooking, hiding and/or tacitly encouraging officer misconduct through the Houston Police Department officers, and the IAD Department, reflect a policy, practice custom and procedure authorizing and allowing the use of actions that violated the civil rights of Plaintiff. Consequently, The Houston Police Department is liable for harm caused to others, such as Plaintiff, as a result of its policies, practices customs and procedures.

36. Defendant, the City of Houston is liable for the constitutional civil rights violations committed by its involved Officers because The Houston Police Department sanctioned the following customs, practices, and policies: (A) Using constitutional violations, to carry out otherwise routine arrests or stops; (B) Ignoring the serious need for training and supervision of its officers in regards to knowing and respecting the constitutional rights of people; (C) Failing to appropriately discipline those persons whom are found to have engaged in the act of violating the constitutional rights of those entrusted to their care and/or under their control; (D) Failing to adequately supervise and/or observe its officers; (E) Failing to discharge officers who have shown

a pattern or practice of violating constitutional rights or persons; and (F) Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

37. At the time of the illegal actions suffered by Rayshawn Batiste on February 2, 2022 by the actions of the involved Houston Police Officers, all of the officers were acting pursuant to an official City of Houston Police Department policy, practice, custom and procedure overlooking and/or authorizing peace officer's misconduct. See *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 659 (1978).

38. Thus, The Houston Police Department's policy of overlooking and covering up officer misconduct was a direct cause of Plaintiff's damages. In particular, the Houston Police Department's policy caused Plaintiff to be deprived of his constitutional right to be free from unlawful searches and seizures under the Fourth and Fourteenth Amendments as applied through 42 U.S.C. Section 1983 and 1988.

## FAILURE TO TRAIN

39. A municipality may be held liable for its failure to train a single police officer when the officer's acts were so egregious that the city should have had clear warning that the particular officer posed a danger to citizens. See *Pineda v. City of Houston*, 124 F. Supp. 2d 1057, 1068 (S.D. Tex. 2000). The Houston Police Department has an 1) an express policy that, after enforcement, caused Plaintiff a constitutional deprivation; 2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or 3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

40. By failing to appropriately discipline, supervise, or train its involved officers, The Houston Police Department authorized or ratified its Officers wrongful acts both by acceptance of acts prior to and including those that caused Plaintiff's damages.

41. The City of Houston Police Department's acts and omissions, when viewed objectively, involved an extreme degree of risk, considering the probability and magnitude of harm to others. The City of Houston Police Department had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others including those of Plaintiff.

42. Thus, in light of the particular risk posed by its involved Officers, The Houston Police Department's failure to train its involved Officers, constitutes gross negligence and/or deliberate and conscious indifference to the rights, safety, and welfare of others, including Plaintiff.

### PLAINTIFF'S THIRD CLAIM: TEXAS TORT CLAIMS ACT

43. The allegations contained in the paragraphs 1 through 42 are incorporated herein by reference.

44. Alternatively, as a pendent state cause of action, Plaintiff bring this action pursuant to the Texas Tort Claims Act, pursuant to TEX. CIV. PRAC. & REM. CODE §§ 101.021.

### FALSE IMPRISONMENT

45. The false imprisonment by handcuffing and seizure of Plaintiff was a direct and proximate result of the willful acts of the City of Houston Police Department's involved Officers. See paragraphs 1 through 42, supra. Therefore, Plaintiff elects to proceed with his State law claims solely against The City of Houston, as permitted by the Texas Tort Claims Act.

11

46. At all material times, the involved City of Houston Police Officers were agents and employees of the City of Houston Police Department and were acting within the course and scope of their employment with The City of Houston Police Department.  The involved City of Houston Police Officers 1) willfully detained Plaintiff; 2) without the consent of Plaintiff; and 3) without authority of law.

47. Pursuant to the Texas Tort Claims Act, The City of Houston had actual notice of  the events giving rise to this lawsuit within the six-month period following the incident.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

48. Consequently, Plaintiff alleges an alternative pendent State law claim for intentional infliction of emotional distress, incorporating the allegations contained in Paragraphs 1 through 47 by reference.

49. The involved City of Houston Police Officers acted  intentionally, knowingly, and/or recklessly causing Plaintiff's damages. The officers' conduct was committed intentionally, knowingly, and/or recklessly, and was the proximate cause of  mental and emotional injuries to the Plaintiff. Said injuries were the direct and immediate consequence of the involved City of Houston Police Officers' wrongful acts and a natural and direct result of their actions. The City of Houston Police Officers' (1) acted intentionally or recklessly; (2) with conduct that was extreme and outrageous; (3) Their conduct proximately caused the Plaintiff emotional distress; and (4) the emotional distress suffered by the Plaintiff was severe.

## VI. PLAINTIFF'S NEGLIGENCE CLAIMS

50. In the alternative to the above claims, Plaintiff brings the following claims of  negligence against The City of Houston, Texas.

12

(1) PLAINTIFF'S CLAIMS OF NEGLIGENT HIRING,  TRAINING, RETENTION AND GROSS NEGLIGENCE

51. Defendant, the City of Houston Police Department knew of the magnitude of the risk involved  in hiring its involved Officers, but Defendants  nonetheless proceeded to hire and retain their involved Officers, acting with conscious indifference to  the rights, safety, and welfare of others, including Plaintiff.

52. Defendant, the City of Houston's negligence includes, but is not limited to, the following acts and  omissions:  a) Defendants negligently hired the involved Officers, despite The City of  Houston Police  Department's  knowledge  that  the  involved  Officers  could  harm citizens;  b) Defendant, the City of Houston failed to screen, or adequately screen, its involved Officers;  c) Defendants failed to train, or adequately train, its involved Officers;  d) Defendant, the City of Houston failed to supervise, or adequately supervise, its involved Officers; and  e) Defendant, the the City of Houston negligently retained the involved Officers even though the City of Houston Police Department knew, or should have known, that its involved Officers posed a danger to citizens.   The City of Houston Police Department had 1) the duty to hire, supervise, and retain competent employees; 2) The City of Houston Police Department, breached that duty; and 3) The City of Houston Police Department's breach of that duty proximately caused the damages sued for by Plaintiff.

53. Each of the above listed acts and/or omissions, taken singularly or in any  combination, rise to  the  level of gross negligence. Defendant, City of Houston's acts and omissions, when viewed  objectively from the standpoint of the actor at the time of its occurrence, involved an extreme  degree of risk, considering the probability and magnitude of harm to others. Defendant,

the City of Houston had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others because (1) the defendant is a governmental unit; (2) the act that the defendant is sued for is governmental; (3) the defendant's immunity from suit is waived; (4) the Defendant's immunity from liability is waived; (5) there are no exceptions to waiver of the Defendant's immunity from liability; and (6) the City of Houston had actual knowledge of the incident through its involved Houston Police Officers' actions. Defendant, the City of Houston was grossly negligent, for which the City of Houston is liable for exemplary damages.

54. As a proximate result of the negligence and/or gross negligence of Defendant, the City of Houston, Plaintiff was caused to suffer damages of mental anguish, and the involved Officers' actions violated constitutional rights.

## RESPONDEAT SUPERIOR

55. At the time of the incident, the involved Defendant, Officers were employees, agents, and/or servants of Defendant, the City of Houston. The involved officers were acting within the course and scope of their employment with said Defendant, The City of Houston at the time of the incident made the basis of this lawsuit. As such, said Defendant, The City of Houston is responsible for the conduct of its involved Officers under the doctrine of respondeat superior due to the master-servant relationship which existed at the time of the incident made the basis of this lawsuit.

## VII. DAMAGES

56. In addition to the damages mentioned in the preceding paragraphs as a direct and proximate result of the intentional and unlawful conduct of Defendants, Plaintiff has

14

suffered,　and in reasonable probability will continue to suffer mental anguish, injury to reputation and additional damages.

## VIII. ATTORNEY'S FEES

57. Plaintiff is entitled to recover attorney's fees and costs as required by the Civil　Rights Attorney's Fees Award Act of 1976. 42 U.S.C. § 1988. Plaintiff thereby request that the　Court and jury award him attorney's fees and expenses.

## IX. JURY DEMAND

58. Plaintiff respectfully demands a jury trial pursuant to FED. R. CIV. P. 8(b).

## X. PRAYER

WHEREFORE,　PREMISES　CONSIDERED,　Plaintiff　respectfully　requests　that Defendants　be　cited　to　appear　and　answer　herein,　and　that　Plaintiff　have　judgment against　Defendants, jointly and severally, for actual damages above the jurisdictional minimum of　the　Court;　exemplary　damages;　pre-judgment　interest;　post-judgment　interest,　costs　of court,　attorney's fees and expenses and all other relief to which Plaintiff is justly entitled, at law or in　equity.

Respectfully submitted,

*/s/ André A. Wheeler*
André A. Wheeler
State Bar No: 24042341
Federal Bar No.: 610759
P. O. Box 682705
Houston, TX 77268
(713) 660-9619 Phone
(281) 715-4627 Fax
andrewheeler_esq@yahoo.com
ATTORNEY FOR PLAINTIFF

15