# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **Rayshawn Batiste,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-00368** |
| | § | |
| **City of Houston; Chief Troy Finner,** | § | |
| **individually; Officer C. Donovan,** | § | |
| **individually; Sgt. D. Russell, individually;** | § | |
| **Officer F. Rahimzadeh, individually;** | § | |
| **Officer G. R. Greenlea, individually;** | § | |
| *Defendants* | § | |

## <u>CHIEF TROY FINNER, SGT. RUSSELL, and OFFICER FROLIK'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Chief of Police Troy Finner, Sgt. D. Russell, and Officer Frolik (collectively "Officers") file this Motion to Dismiss the Original Complaint [Doc. #1], of Plaintiff Rayshawn Batiste, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of said motion, the "Officers" would respectfully show the Court as follows:

TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS     3

STATEMENT OF THE ISSUES     6

SUMMARY OF THE ARGUMENT     6

STANDARD OF REVIEW     7
Motion to Dismiss under Rule 12(b)(6)     7

MOTION FOR JUDICIAL NOTICE OF PUBLIC AND JUDICIAL RECORDS     8

ARGUMENT AND AUTHORITIES     10

    I.     Whether the HPD Officers are entitled to Qualified Immunity

    II.     Plaintiff fails to plead the violation of any constitutional right to state a section 1983 claim     12

    *No Fourth Amendment Violation*
    *No Fourteenth Amendment Violation'*
    *No excessive force violation*
    *No Assault*

    III. Plaintiff's State law claims are barred by the TTCA's election of remedies provisions

CONCLUSION AND PRAYER     22

CERTIFICATE OF SERVICE     23

**NATURE AND STAGE OF PROCEEDINGS**

1.     Along with suing the City of Houston, Plaintiff sues Chief of Police Troy Finner, Sgt. D. Russell, Officer R. Rahimzadeh, Officer G.R. Greenlea and Officer Donovan in their individual and official capacity, for compensatory damages under 42 U.S. § 1983 for the alleged "unreasonable search and seizure of Plaintiff." [Doc. #1 pg. 1]. Plaintiff alleges that he was severally deprived of "his federally protected right to be free from an unreasonable search and seizure" under the Fourth and Fourteenth Amendments of the United States Constitution. *Id.*

2.     This case stems from Houston Police Department Officers' arrest of Plaintiff's on the evening of February 2, 2022. Various officers from the Houston Police Department were present and took part in the undercover investigation and arrest.

3.     Plaintiff's February 2, 2022, arrest centered around Houston Police Department Officers' undercover narcotics investigation at the Luck Store located at 800 S. Braeswood Blvd., Houston, TX of the sale of controlled substances. With the aid of an informant, a sale of a controlled substance was made, using a pre-recorded serial number on a United States currency. Upon receiving the signal of the sale, Plaintiff and another person were detained and searched. The Officers each wore a City of Houston Police issue body camera, which was activated prior to the search.

4.     Once outside of the store, in the presence of other officers, Plaintiff was handcuffed and situated near the driver's side of the Police Officer's vehicle. A search was made of the Plaintiff's pocket, shoes, socks, hat, and clothing. At the time of the search Plaintiff was wearing a long white sleeve shirt, red boots, black socks, and baggie gray

sweatpants. One of the Officers present searched Plaintiff, by removing Plaintiff's hat, emptied Plaintiff's pockets (removing all of the objects in the pocket). Plaintiff's waistline, rear end, and groins area were searched by the Officer, by simply stretching the waistline of the pants and observing these areas through the use a flashlight. The search was captured on that Officer's body worn camera, as the camera is situated in a manner to record the view of the officer using the camera. At no time was Plaintiff strip searched nor was Plaintiff's pants pulled down to expose his private parts to the public. The other Officers' body cameras were activated at the time of the search, and none of those cameras captured the same view/angles as the Officer who searched Plaintiff.

5.      Upon finding the currency with the pre-recorded serial number, Plaintiff was placed under arrest and booked into the Harris County jail; Harris County Criminal Court Cause No. 175742101010. On February 3, 2022, the District Attorney's Office filed a Complaint charging the Plaintiff with the "Felony charge: Possession with intent to deliver a controlled substance." [Exhibit #1]. Based upon the Plaintiff's prior criminal history, the District Attorney motioned the Court for sufficient bail. [Exhibit #2]. Plaintiff was then indicted by the Grand Jury on April 11, 2022, and bail in the amount of $2500 was ordered. [Exhibit #3]. After several granted continuance, on February 24, 2023, the criminal case was finally reset for jury trial on Friday, March 10, 2023, at 9:30 a.m. [Exhibit #4]. On about March 2, 2023, after participating in the discovery process with the District Attorney's Office, Plaintiff filed a Motion to Suppress, alleging no probable cause for the arrest as "the evidence found is fruit of an illegal search and seizure" [Exhibit #5]. On March 9, 2023, the Court granted the Motion to Suppress. The District Attorney's Office

4

filed a Motion to Dismiss [Exhibit #6]. On the same day at 4:55 p.m. the Court entered an order dismissing the complaint against the Plaintiff. [Exhibit #7]. Additionally on March 9, 2023, the selection list was filed. [Exhibit #8].

6. Plaintiff asserts that on March 9, 2023, jury trial commenced along with the Plaintiff's Motion to Suppress which was carried along with the trial. [Doc. #1 at ¶16]. Apparently, the District Attorney's Office or Plaintiff's Defense counsel chose to play the video at the hearing. Plaintiff alleges that the "twelve jurors saw the body worn camera video of his search." *Id*. Plaintiff argues that "the jury saw video footage of [his] penis, public hair and his buttocks." [Doc. #1 at ¶17]. Additionally, Plaintiff alleges that the "same video was also seen by employees of the Houston Police Department and employees of the The [sic] Houston Police department District Attorney's Office, as well as staff of the 178th District Court, including the presiding judge." *Id*.

7. Thereafter, on January 21, 2024, Plaintiff filed this Complaint for violation of his Fourth and Fourteenth Amendments. As it relates to the Officers, Plaintiff makes sweeping allegations that "HPD Officers intentionally and wrongfully subjected [Plaintiff] to public humiliation for over an hour and violated his rights under the Texas and Untied States Constitution." [Doc. #1 ¶ 18]. As it relates to the Officers, Plaintiff alleged that he was assaulted by the Officers. [Id ¶¶ 23-24]. As a result of the assault claim, Plaintiff seeks damages for mental anguish. Plaintiff alleges that "Mr. Lockett and his mother the Plaintiff suffered at least anxiety, fear, anger, and depression because of the acts of the individual name defendants and the City of Houston. [Id at ¶ 26]. Additionally, as it relates to the Officers, Plaintiff also see punitive damages for their actions and inaction." [Id. at ¶28].

8.     Plaintiff's Complaint recites a number of legal terms and conclusions without any supporting factual allegations, which the Court need not accept as true. *See Benfield v. Magee*, 945 F.3d 333, 336-37 (5th Cir. 2019) (the Court is not required to "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement.").

9.     Officers move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to state any actionable injury, cognizable section 1983 claim, or state law claim.

## STATEMENT OF THE ISSUES

Whether the Plaintiff can overcome the HPD Officers' Qualified Immunity

Whether the Plaintiff has plausibly pled any facts to support any claim for relief against the HPD Officers.

Whether the Plaintiff has pled any plausible claims against the Officers in their individual capacity.

Plaintiff's State law claims are barred by the TTCA's election of remedies provision.

## SUMMARY OF THE ARGUMENT

10.     The Complaint against the Officers should be dismissed. Plaintiff has failed to plausibly allege that any of the Officers engaged in any constitutional violation to support a § 1983 claim or overcome the Officers' qualified immunity. Plaintiff's claim cannot be asserted under the Fourteenth Amendment because it involves pretrial deprivation of liberty that must be analyzed under the Fourth Amendment. Allegations of reputational damage and shame alone do not support any independent property interest implicating due process

requirements.

11. The Officers are entitled to dismissal of Plaintiff's common law tort claims against him under the election of remedies provision, § 101.101(a), of the Texas Tort Claims Act. Having elected to sue both the City and the Officers, Plaintiff has elected to sue the City and forever barred from suing the Officers for claims arising out of the same operative facts

**STANDARD OF REVIEW**

**MOTION TO DISMISS UNDER RULE 12(b)(6)**

12. A complaint may be dismissed as a matter of law if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678). Thus, "dismissal is appropriate only if the complaint fails to plead 'enough facts to state a claim of relief that is plausible on its face.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).

13. A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 544. *See also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) ("Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim"). "An unadorned, the-defendant-unlawfully-harmed-me

7

accusation" will not suffice. *Ashcroft,* 566 U.S. at 678-679. Dismissal is therefore appropriate if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 624 (5th Cir. 2001) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)); *see also Hale*, 642 F.3d at 499.

14. "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003) (citation omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In conducting this analysis, the Court does not consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Conclusory allegations or legal conclusions masquerading as factual conclusions cannot prevent dismissal. *Taylor*, 296 F.3d at 378 (quoting *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993).

**MOTION FOR JUDICIAL NOTICE OF PUBLIC AND JUDICIAL RECORDS**

15. When deciding a motion to dismiss a district court may "consider matters of which they may take judicial notice." "A judicially noticed fact must be one not subject to

reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). *Funk*, 631 F.3d at 783. The court *must* take notice of a fact if "a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c)(2). Taking judicial notice of public records or other court proceedings does not convert this motion to dismiss into a motion for summary judgment. *See Dalfrey v. Boss Hoss Cycles, Inc.*, 456 F. App'x 329, 333 n.3 (5th Cir. 2011) (holding that the district court was not required to convert the motion to dismiss into a motion for summary judgment when it took judicial notice of public records.).

16.     Defendant Officers move for the Court to take judicial notice of Harris County District Clerk records for the criminal cases referenced in, and central to, Plaintiff's complaint. Certified copies of the entire casefile contents are attached as Exhibits 1 through 8 and include:[1]

> **Cause No. 175742101010**: Complaint filed by the Assistant District Attorney, charging the Plaintiff with Possession with intent to deliver a controlled substance. [Exhibit #1]. District Attorney's Office Motion for Sufficient Bail. [Exhibit #2]. Grand Jury Indictment charging Plaintiff with possession with intent to deliver a controlled substance and bail in the amount of $2500 was ordered. See [Exhibit #3]. Jury trial setting for Friday, March 10, 2023, at 9:30 a.m. [Exhibit # 4]. Plaintiff Motion to Suppress filed March 8, 2023. [Exhibit #5]. District Attorney's Office's Motion to Dismiss based upon Court's granting of the Motion to Suppress and Order and Notice. [Exhibit #6]. Court order dismissing the complaint against the Plaintiff. [Exhibit #7]. Jury selection list was filed.  [Exhibit # 8]

---

[1] All Causes are styled *State of Texas v. Rayshawn Batiste*, Cause No. 175421101 in the 178th Judicial District Court of Harris County Texas.

**ARGUMENT AND AUTHORITIES**

17.     Plaintiff does not actually state which causes of action he is asserting against but seems to lump all the individual defendants together in asserting three causes of action: (1) Fourth and Fourteenth amendment violations for excessive force and unreasonable search and seizure; (2) assault; and (3) failure to intervene. [Doc. #1 at ¶¶ 1, 4, 19, 21, and 23]. Plaintiff's Complaint is woefully insufficient on all three causes of action.

**HPD Officers are entitled to Qualified Immunity**

18.     The Defendant Officers are protected by qualified immunity. Governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

19.     "When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether 'the plaintiff's pleadings assert facts, which if true, would overcome the defense of qualified immunity.'" *Rojero v. El Paso County*, 226 F.Supp.3d 768, 776-777 (W.D. Tex. Apr 28, 2016) (citation omitted); *see also Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 201 (5th Cir. 2020). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). The plaintiff must show "(1) that the official violated a statutory or

constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) However conclusory allegations or unsubstantiated assertions will not defeat the qualified immunity defense. *Washington ex rel. J.W. v. Katy Indep. School Dist.*, 390 F.Supp.3d 822, 838 (S.D. Tex. Jun 5, 2019) (citation omitted).

20.     Once a defendant has invoked the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). The threshold inquiry in resolving an issue of qualified immunity is whether, taking the facts in the light most favorable to the plaintiff, the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Scott v. Harris*, 550 U.S. 372, 377-78 (2007). Next, the Court considers whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201. "Answering in the affirmative requires the court to be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). "This requirement establishes a high bar." *Id.* When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity. *Id.* Officials "who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).

21.     On a motion to dismiss, "a district court must first find 'that the plaintiff's

pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Backe v. LeBlanc*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[2]

22.     Plaintiff has not pleaded sufficient facts and has failed to plausibly allege the violation of a clearly established constitutional right, that would overcome HPD Officers qualified immunity.

23.     It is unclear which officer is alleged to have taken an active role in the search, or which offices knew of said violation and failed to intervene. Plaintiff's complaint is devoid of any direct facts that state plausible claims against the HPD Officers.

24.     All of the individual Defendants are asserting qualified immunity and seek summary judgment on Plaintiff's claims against them for both an alleged unreasonable search and the use of excessive force.

### Plaintiff fails to plead the violation of any constitutional right to state a section 1983 claim

25.     To state a claim under 42 U.S.C.S. § 1983, a plaintiff must demonstrate first, a violation of the U.S. Constitution or of federal law; and second, that the violation was committed by someone acting under color of state law. *O'Dwyer v. Nelson*, 310 F. App'x 741,

---

[2] *Id.* at 648. *See also Cole v. Carson*, 935 F.3d 444, 474 (5th Cir. 2019) (Ho & Oldham, JJ., dissenting) (noting thirteen cases in the last sixteen years in which the Supreme Court applied the "extraordinary remedy of a summary reversal" to correct failures "not only to identify a clearly established rule of law, but to do so with *great specificity*").

742 (5th Cir. 2009).

26. "A defendant's personal involvement is an essential element of a §1983 claim, which must be pled with specific facts and not conclusory allegations." *Villegas v. City of El Paso*, EP-15-CV-00386-FM, 2020 WL 981878, at *4 (W.D. Tex. Feb. 28, 2020) (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); and *Thompson v. City of Starkville*, 901 F.2d 456.469 n. 13 (5th Cir. 1990). A §1983 claim must be based on a defendant's actual participation in an event that causes a violation of civil rights. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompson v. Crnkovich*, 788 Fed. App'x. 258, 259 (5th Cir. 2019).

27. The starting point for both the illegal search and excessive force claims is whether the Plaintiff has shown specific conduct by the Defendants which clearly violates a well-established constitutional right. *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). Specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts. *Saucier v. Katz,* 533 U.S. 194, 205 (2001). But the Defendants did not conduct the actual search.

28. Plaintiff does not allege any specific actions taken by each named Defendant and how it represents constitutional violation. There are no facts regarding each Officer's personal involvement with Plaintiff, or with the events Plaintiff claims took place on February 2, 2022. The allegations regarding the officers are all the same.

> An Officer walked to Rayshawn Batiste and detained him. Rayshawn Batiste was handcuffed and walked back to the store to a marked police vehicle. Rayshawn

Batiste was searched for minutes. His shoes were removed, his pockets were searched, his belongings were seized, and his genitals and buttocks were searched.

[Doc. #1 ¶ 14]

29. This wide sweeping and blanket statements are insufficient to make a claim against the Officers for Fourth and Fourteenth Amendment violations. Therefore, those claims should be dismissed accordingly.

*No Fourth Amendment Violation*

30. Plaintiff alleges he was deprived of his right to be secure in his person against an unreasonable search in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution. However, the factual allegations arose from the Plaintiff's delivery of narcotics, and the arrest of Plaintiff for such The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Warrantless searches and seizures are *per se* unreasonable unless one of the recognized exceptions applies. *Cotropia v. Chapman*, 978 F.3d 282, 286 (5th Cir. 2020).

31. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118–19, 122 S. Ct. 587 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297 (1999)). As the invasiveness of a search increases, the Fourth Amendment requires greater justification to be reasonable. *See Illinois v. Lafayette*, 462

U.S. 640, 645, 103 S. Ct. 2605 (1983) ("the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street, but the practical necessities of routine jail administration may even justify taking a prisoner's clothes before confining him"); *United States v. Vega-Barvo*, 729 F.2d 1341, 1344 (11th Cir. 1984) ("As intrusiveness increases, the amount of suspicion necessary to justify the search correspondingly increases.").

32.    In this instance, nothing Plaintiff alleges suggests that any of the Officers subjected him to a "public strip search." Plaintiff's only complaint is that the search which was captured on video showed his "genitalia and buttocks on the officer's body worn camera." [Doc. #1 at ¶ 14]. Plaintiff then complained that the video was played during the Motion to Suppress phase of his criminal trial and "twelve jurors saw the body worn camera video of [him] being searched." [*Id*.] Plaintiff complains that "the same video also was seen by employees of the Houston Police Department and employees of the Houston Police Department District Attorney's Office, as well as the staff of the 178th District Court, including the presiding judge." [ Id at ¶ 17]. Plaintiff alleges that "HPD involved Officers, intentionally and wrongfully subjected [him] to public humiliation for over an hour." [Id at ¶ 18].

33.    The search of Plaintiff occurred during the time that he was being searched and arrested for participating in criminal activities. The undercover officer's observations were sufficient to provide probable cause for warrantless arrest of the Plaintiff for drug offense committed.

34.    There are numerous cases which have upheld warrantless body cavity searches in these situations. For example, in 2003, the Texas Court of Criminal Appeals considered a case involving a visual body cavity search. *McGee v. State,* 105 S.W.3d 609 (Tex. Crim. App. 2003). The Court considered *Bell v. Wolfish,* 441 U.S. 520 (1979), where the Supreme Court held that a reasonableness inquiry requires a court to balance the need for a particular search against the invasion of the personal rights that the search entailed. *Id*. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted. *Id*. This four-part standard to determine reasonableness is ignored by Plaintiff who relies entirely on the scope of the intrusion and ignores the justification for initiating the search, the manner in which the search was conducted, and place where it was conducted.

35.    In *McGee* the Court held the inquiry does not end with the intrusiveness of the search. *McGee v. State,* 105 S.W.3d, at 616. After considering the scope of the intrusion, the manner in which the search was conducted, the justification for the search, and where the search was conducted, the Court held that a visual body cavity search, where the defendant was required to bend over and spread his buttocks for inspection, met three of the four requirements. *Id*., at 618. The search was not violent, there was sufficient justification (incident to an arrest), and the search was conducted at a fire station. *Id*. The issue of the scope of the search was outweighed by the latter three requirements. Here, the search was conducted after obtaining a warrant, at a hospital, and by a licensed physician. There was no violence involved and the actual search was conducted privately with a minimum number of police personnel present.

36.     Like *McGee*, the search of Plaintiff under these similar facts was justified. The scope of the search Plaintiff's search was limited to the Officers looking into the Plaintiff's pants area; was by the Officer using his eyes only; the justification was to secure the  evidence and to check for weapons; and the location was on the scene at the police vehicle just prior to placing the Plaintiff in the back seat of the police vehicle.

37.     While there may be a body of law that body-cavity searches should rarely, if ever be conducted in a public place, *McGee*, at 617 (citing *Logan v. Shealy,* 660 F.2d 1007, 1014 (4th Cir. 1981)), Plaintiff has not established under the facts alleged in this case that this is one of them.

***Insufficient Allegations: Failure to Intervene (Bystander Liability).***

38.     Bystander liability may be imputed to an officer who knows that another officer is violating an individual's constitutional rights but, despite having a reasonable opportunity to prevent that harm, does nothing. *Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th cir. 2002)). While in *Hamilton v. Kindred,* 845 F.3d 659 (5th Cir. 2017) Plaintiffs were able to make a claim of bystander liability against an officer for failing to act to prevent or stop other officers from conducting roadside bodily cavity searches, but the facts presented in *Hamilton* cannot remotely be compared to what happened in this case. *Hamilton* was another case involving officers conducting body cavity searches at the scene of a traffic stop in open view of passing motorists. As previously discussed, Plaintiff has not shown (1) the facts alleged make out a violation of a constitutional right, or (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Ontiveros v.*

17

*City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009). Defendants are unaware of any case where bystander liability has been applied to officers who fail to act to prevent other officers from attempting to obtain a search warrant.

39.     As with all of Plaintiff's other allegations, Plaintiff claims of failure to intervene with an impermissibly broad brush. Plaintiff states "all individually named defendants witnessed or knew about the excessive force used against Mr. Batiste, and all individually saw the illegal search of Mr. Batiste and either directly participated or chose not to intervene to prevent the continued illegal search." [Doc. #1 at ¶ 21]

40.     Plaintiff only gives conclusionary statements that the other defendants knew. In a successfully plead a bystander liability claim, Plaintiff's complaint must show that the named Defendants (1) knew a fellow officer was violating Plaintiff's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm to Plaintiff, but (4) chose not to act. *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). Bystander liability specifically requires the officer acquiesce to the constitutional violation. *McDonald v. McClelland*, 779 Fed. Appx. 222, 227 (5th Cir. 2019) ("Bystander liability cannot attach if the officer did not know about and acquiesce in the constitutional violation.") Moreover, "when qualified immunity is asserted, the plaintiff must point to clearly established law that would require intervention under the circumstances." *Id.*

*No Fourteenth Amendment Violation*

41.     Plaintiff's claim cannot be asserted under the Fourteenth Amendment because

it involves pretrial deprivations of liberty that must be analyzed under the Fourth Amendment. It is well settled that "an unlawful arrest claim must be analyzed under the Fourth Amendment, not the Fourteenth Amendment." *Zimmerman v. Cutle*r, 657 F. App'x 340, 341 (5th Cir. 2016). A person may have a Fourteenth Amendment due process claim based on manufactured evidence if "[1] police intentionally fabricate[d] evidence and successfully g[o]t someone falsely charged ... and [2] the Fourth Amendment is unavailing."[3] To allege intentional police fabrication, however, the plaintiff must make more than conclusory allegations. *Id.* (citing *Bosarge*, 796 F.3d at 441-42). In addition to showing intentional police fabrication, the plaintiff needs to allege facts that show the claim cannot be brought under the Fourth Amendment. Typically, if the alleged manufactured evidence leads only to an arrest and not a trial, the plaintiff must seek recovery under the Fourth Amendment because the Fourth Amendment provides protection for pre-adjudication rights and if "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing th[o]se claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The right to be arrested with probable cause is protected under the Fourth Amendment, and therefore it generally cannot be brought as a Fourteenth Amendment due process claim. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010). Plaintiff does not claim that the Officers intentionally

---

[3] *Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015). The fabrication must be intentional and must be done by an official. *See Id.* at 767 (distinguishing *Cuadra*, 626 F.3d at 814, where school officials and not officers were at fault and *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 441-42 (5th Cir. 2015) where there was no intentional fabrication).

manufactured any evidence used at a trial against Plaintiff, or any facts supporting

a Fourteenth Amendment due process claim.  Even if Plaintiff included such allegations,

he cannot show that the Fourth Amendment would be unavailing to authorize a duplicative

Fourteenth Amendment claim.  *See*, *e.g.*, *Guillory v. Dalbour*, No. 2:15-cv-02452, 2016

U.S. Dist. LEXIS 133267, at *14 (W.D. La. 2016).

*Insufficient Allegations: Assault*

42.     Plaintiff's complaint also does not specifically identify which officer

he claims is liable for assault. Rather, Plaintiff simply states "[t]he defendants is liable

for assault if (1) The defendant acted intentionally, knowingly, or recklessly (2) the

defendant made contact with the plaintiff's person (3) the defendant's contact caused

bodily injury to the Plaintiff." [Doc. #1 at ¶ 23]

43.     "Under Texas law, the elements of battery are: (1) offensive touching

by the party committing the offense; (2) with any part of a plaintiff's person." *Trusty v.

Walmart Inc.*, CV H-20-235, 2020 WL 2497733, at *2 (S.D. Tex. May 13, 2020) "A

person commits an assault by 'intentionally or knowingly caus[ing] physical contact

with another when the person knows or should reasonably believe that the other will

regard the contact as offensive or provocative.'" *Id.* Again, Plaintiff's complaint fails

to allege or identify which officer had any personal involvement with the force used,

the search of his body, or that any of the Officers interacted with Plaintiff in any way.

Plaintiff has pled no facts to support a claim of assault against any of the Officers. The

Court should dismiss these claims accordingly.

**Motion to Dismiss pursuant to the Texas Tort Claims Act**

*Officers were acting under the general scope of their employment.*

44.     Plaintiff in his complaint acknowledges the fact that "all Defendant Officers were acting under color of state law as agents and employees of Defendant, the city of Houston" Doc. # 1 at ¶ 30].

45.     "[A]ll common-law tort theories alleged against a governmental unit are assumed to be 'under the Tort Claims Act' for purposes of section 101.106."[4] Dismissal is required under section 101.106(f), because Plaintiff's allegations involve the HPD Officers' actions in the general scope of their employment and authority as police officers for the City of Houston. *See Smith v. Heap*, 31 F.4th 905 (U.S. 5th Cir. 2022) (Tex. Civ. Prac. & Rem. Code Ann. § 101.106 precluded a constable from another constable's defamation and intentional infliction of emotional distress claims because the other constable named both the constable and the county as defendants and the constable's job responsibilities were linked to the alleged torts); *Garza v. Harrison*, 574 S.W.3d 389, 406 (Tex. 2019) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008)).  The HPD Officers invoke the election-of-remedies provision of the Texas Tort Claims Act (TTCA), Tex. Civ. Prac. & Rem. Code Ann. § 101.106, to dismiss Plaintiff's common law tort claims asserted against Defendants.

46.     Plaintiff's claims fall within areas for which governmental immunity is

---

[4] *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 161 (5th Cir. 2017) (quoting *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011)).

expressly retained under Texas law, including intentional torts.[5]

47. Therefore, Plaintiff's assault, and any other common law claims should be dismissed with prejudice as to HPD Officers. [6]

## CONCLUSION AND PRAYER

For the reasons stated, Plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted against Defendants Chief of Police Troy Finner, Sgt. D. Russell, and Officer Frolik, or overcome their qualified immunity, and further opportunities to amend would be futile. Defendants Chief of Police Troy Finner, Sgt. D. Russell, and Officer Frolik, respectfully pray that the honorable Court grant this motion and dismiss with prejudice all Plaintiff's claims against them and grant all other relief to which Defendants may be entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

CHRISTY L. MARTIN
Section Chief, Torts/Civil Rights

By: */s/ Michelle C. Taylor*
Michelle C. Taylor
Senior Assistant City Attorney
Attorney in Charge
SBN: 224060889
FBN: 3773284
Tel. (832) 393-6248

---

[5] A governmental entity retains immunity if the complained of act was intentional. *Id.* § 101.057. *City of Watauga v. Gordon*, 2014 WL 2535995, 13-0012 (Tex. 2014).

[6] *See Smith v. Heap*, 31 F.4th 905 (U.S. 5th Cir. 2022) (Tex. Civ. Prac. & Rem. Code Ann. § 101.106 precluded a constable from another constable's defamation and intentional infliction of emotional distress claims because the other constable named both the constable and the county as defendants and the constable's job responsibilities were linked to the alleged torts).

Michelle.Taylor2@houstontx.gov
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368

**ATTORNEYS FOR DEFENDANTS**
**Chief Troy Finner, Sgt. D. Russell, and**
**Officer Frolik**

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2024, a true and correct copy of the foregoing document, and any attachments, were delivered to all opposing counsel(s) by electronic filing of same in accordance with the District ECF's service rules, and alternatively via certified mail, return receipt requested, and/or e-mail or facsimile transaction to:

Andre A. Wheeler
P.O. Box 682705
Houston, Texas 77268
Andrewheeler_esq@yahoo.com

*/s/ Michelle C. Taylor*
Michelle C. Taylor

## VERIFICATION

I verify that the documents attached as Exhibits 1-8 contain true and correct copies of the documents they purport to be.

April 5, 2023                 */s/ Michelle C. Taylor*
Date                          Michelle C. Taylor