# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **Rayshawn Batiste,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-00368** |
| | § | |
| **City of Houston; Chief Troy Finner,** | § | |
| **individually; Officer C. Donovan,** | § | |
| **individually; Sgt. D. Russell, individually;** | § | |
| **Officer F. Rahimzadeh, individually;** | § | |
| **Officer G. R. Greenlea, individually;** | § | |
| *Defendants* | § | |

## CITY OF HOUSTON'S
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant City of Houston ("Houston") files this Motion to Dismiss the Original Complaint [Doc. #1], of Plaintiff Rayshawn Batiste, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of said motion, Houston would respectfully show the Court as follows:

1

# TABLE OF CONTENTS

TABLE OF CONTENTS   2

NATURE AND STAGE OF PROCEEDINGS   3

    MOTION FOR JUDICIAL NOTICE OF PUBLIC AND JUDICIAL RECORDS   6

ARGUMENT AND AUTHORITIES   7

    I.   Plaintiff fails to plead the violation of any constitutional right to state a section 1983 claim   7

        *No Fourth Amendment Violation*   9

II.      Governmental immunity protects Houston from tort allegations   20

CONCLUSION AND PRAYER   21

CERTIFICATE OF SERVICE   22

**NATURE AND STAGE OF PROCEEDINGS**

1.     Along with suing the City of Houston, Plaintiff sues Chief of Police Troy Finner, Sgt. D. Russell, Officer R. Rahimzadeh, Officer G.R. Greenlea and Officer Donovan in their individual and official capacity, for compensatory damages under 42 U.S. § 1983 for the alleged "unreasonable search and seizure of Plaintiff." [Doc. #1 pg. 1]. Plaintiff alleges that he was severly deprived of "his federally protected right to be free from an unreasonable search and seizure" under the Fourth and Fourteenth Amendments of the United States Constitution. *Id.*

2.     This case stems from Houston Police Department Officers' arrest of Plaintiff on the evening of February 2, 2022. Various officers from the Houston Police Department were present and took part in the undercover investigation and arrest.

3.     Plaintiff's February 2, 2022, arrest centered around Houston Police Department Officers' undercover narcotics investigation at the Luck Store located at 800 S. Braeswood Blvd., Houston, TX of the sale of controlled substances. With the aid of an informant, a sale of a controlled substance was made, using a pre-recorded serial number on a United States currency. Upon receiving the signal of the sale, Plaintiff and another person were detained and searched. The officers each wore a City of Houston Police issue body camera, which was activated prior to the search.

4.     Once outside of the store, in the presence of other officers, Plaintiff was handcuffed and situated near the driver's side of the Police Officer's vehicle. A search was made of the Plaintiff's pocket, shoes, socks, hat, and clothing. At the time of the search Plaintiff was wearing a long white sleeve shirt, red boots, black socks, and baggie gray

sweatpants. One of the officers present searched Plaintiff, by removing Plaintiff's hat and emptied his pockets (removing all the objects in the pocket). Plaintiff's waistline, rear end, and groins area were searched by the officer, by simply stretching the waistline of the pants and observing these areas through the use a flashlight. The search was captured on that officer's body worn camera, as the camera is situated in a manner to record the view of the officer using the camera. At no time was Plaintiff strip searched nor was Plaintiff's pants pulled down to expose his private parts to the public. The other officers' body cameras were activated at the time of the search, and none of those cameras captured the same view/angles as the officer who searched Plaintiff.

5.      Plaintiff was placed under arrest and booked into the Harris County jail; Harris County Criminal Court Cause No. 175742101010. On February 3, 2022, the District Attorney's Office filed a Complaint charging the Plaintiff with the "Felony charge: Possession with intent to deliver a controlled substance." [Exhibit #1].

6.      Plaintiff asserts that on March 9, 2023, jury trial commenced along with the Plaintiff's Motion to Suppress which was carried along with the trial. [Doc. #1 at ¶16]. Apparently, the District Attorney's Office or Plaintiff's Defense counsel chose to play the video at the hearing. Plaintiff alleges that the "twelve jurors saw the body worn camera video of his search." *Id*. Plaintiff argues that "the jury saw video footage of [his] penis, public hair and his buttocks." [Doc. #1 at ¶17]. Additionally, Plaintiff alleges that the "same video was also seen by employees of the Houston Police Department and employees of the The [sic] Houston Police department District Attorney's Office, as well as staff of the 178th District Court, including the presiding judge." *Id*.

7. Thereafter, on January 21, 2024, Plaintiff filed this Complaint for violation of his Fourth and Fourteenth Amendments. As it relates to Houston, Plaintiff alleges that Houston is "liable under 42 U.S.C. § 1983 for failing to supervise and train its officers, and for overlooking and covering up officer misconduct.: Id at ¶ 33. In addition, Plaintiff alleges that Houston Police Department has a general policy, pattern and/or practice of not appropriately disciplining officers for their misconduct, thereby sanctioning the officers' actions, which amounted to a departmental policy of overlooking constitutional violations." *Id*. Additionally, Plaintiff alleges claims for false imprisonment, intention infliction of emotional distress and negligence under the Texas Torts Claim Act. *Id* at ¶¶ 45- 54.

8. Houston moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to state any actionable injury, cognizable section 1983 claim, or state law claim for which the City of Houston's governmental immunity has been waived.

## STATEMENT OF THE ISSUES

Whether the Plaintiff has pled a constitutional violation to support any 42 U.S.C. § 1983 claim or overcome the independent intermediary doctrine.

Whether the Plaintiff has plausibly alleged facts to support a 42 U.S.C. § 1983 claim against the City under *Monell*.

Whether Governmental immunity protects the City from Plaintiff's tort allegations.

## STANDARD OF REVIEW

## MOTION TO DISMISS UNDER RULE 12(b)(6)

9. A complaint may be dismissed as a matter of law if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678). Thus, "dismissal is appropriate only if the complaint fails to plead 'enough facts to state a claim of relief that is plausible on its face.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).

**MOTION FOR JUDICIAL NOTICE OF PUBLIC AND JUDICIAL RECORDS**

10.    When deciding a motion to dismiss a district court may "consider matters of which they may take judicial notice." "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). *Funk*, 631 F.3d at 783. The court *must* take notice of a fact if "a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c)(2). Taking judicial notice of public records or other court proceedings does not convert this motion to dismiss into a motion for summary judgment. *See Dalfrey v. Boss Hoss Cycles, Inc.*, 456 F. App'x 329, 333 n.3 (5th Cir. 2011) (holding that the district court was not required to convert the motion to dismiss into a motion for summary judgment when it took judicial notice of public records.).

11.    Houston moves for the Court to take judicial notice of Harris County District Clerk records for the criminal cases referenced in, and central to, Plaintiff's complaint.

Certified copies of the entire casefile contents are attached as Exhibits 1 through 8 and include:[1]

> **Cause No. 175742101010**: Complaint filed by the Assistant District Attorney, charging the Plaintiff with Possession with intent to deliver a controlled substance. [Exhibit #1]. District Attorney's Office Motion for Sufficient Bail. [Exhibit #2]. Grand Jury Indictment charging Plaintiff with possession with intent to deliver a controlled substance and bail in the amount of $2500 was ordered. See [Exhibit #3]. Jury trial setting for Friday, March 10, 2023, at 9:30 a.m. [Exhibit # 4]. Plaintiff Motion to Suppress filed March 8, 2023. [Exhibit #5]. District Attorney's Office's Motion to Dismiss based upon Court's granting of the Motion to Suppress and Order and Notice. [Exhibit #6]. Court order dismissing the complaint against the Plaintiff. [Exhibit #7]. Jury selection list was filed.  [Exhibit #8]

### ARGUMENT AND AUTHORITIES

12.     Plaintiff does not actually state which causes of action he is asserting against but seems to lump all the individual defendants together in asserting three causes of action: (1) Fourth and Fourteenth amendment violations for excessive force and unreasonable search and seizure; (2) assault; and (3) failure to intervene. [Doc. #1  at ¶¶ 1, 4, 19, 21, and 23]. Plaintiff's Complaint is woefully insufficient on all three causes of action.

### I.      Plaintiff fails to plead the violation of any constitutional right to state a section 1983 claim

13.     Plaintiff's complaint contains only conclusory allegations and is devoid of any specific facts that state plausible claims against the City. Plaintiff claims the City violated his Fourth and Fourteenth Amendment rights. [Doc. #1 at ¶ 32]. The allegations he pleads to support those claims are (1) "that the Houston fil[ed] to supervise and train its officers, and overlook and cover up officer misconduct" and Houston Police Department

---

[1] All Causes are styled *State of Texas v. Rayshawn Batiste*, Cause No. 175421101 in the 178th Judicial District Court of Harris County Texas.

has a general policy, pattern and/or practice of not appropriately disciplining officers for their misconduct, (3) Houston is liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality and (4) Even if the Houston Police Department's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. [Doc. #1 at ¶ 33-342] However, there are no properly pled facts that support these conclusory allegations, much less facts that rise to the high burden of *Monell* liability.

14.     Plaintiff brings a § 1983 claim under a theory of *Monell* liability against the City for alleged violations of his Fourth and Fourteenth Amendment rights. Doc. #1 at ¶ 33. "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

### *No Fourteenth Amendment Violation*

15.     Plaintiff's claim cannot be asserted under the Fourteenth Amendment because it involves pretrial deprivations of liberty that must be analyzed under the Fourth Amendment. It is well settled that "an unlawful arrest claim must be analyzed under the Fourth Amendment, not the Fourteenth Amendment." *Zimmerman v. Cutler*, 657 F. App'x 340, 341 (5th Cir. 2016). A person may have a Fourteenth Amendment due process claim based on manufactured evidence if "[1] police intentionally fabricate[d] evidence and successfully g[o]t someone

falsely charged ... and [2] the Fourth Amendment is unavailing."[2]  To allege intentional police fabrication, however, the plaintiff must make more than conclusory allegations.  *Id.* (citing *Bosarge*, 796 F.3d at 441-42). In addition to showing intentional police fabrication, the plaintiff needs to allege facts that show the claim cannot be brought under the Fourth Amendment. Typically, if the alleged manufactured evidence leads only to an arrest and not a trial, the plaintiff must seek recovery under the Fourth Amendment because the Fourth Amendment provides protection for pre-adjudication rights and if  "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing th[o]se claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The right to be arrested with probable cause is protected under the Fourth Amendment; and therefore, it generally cannot be brought as a Fourteenth Amendment due process claim.  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010).  Plaintiff does not claim that the Officers intentionally manufactured any evidence used at a trial against Plaintiff, or any facts supporting a Fourteenth Amendment due process claim. Even if Plaintiff included such allegations, he cannot show that the Fourth Amendment would be unavailing to authorize a duplicative Fourteenth Amendment claim.  *See*, *e.g.*, *Guillory v. Dalbour*, No. 2:15-cv-02452, 2016 U.S. Dist. LEXIS 133267, at *14 (W.D. La. 2016).

   ***No Fourth Amendment Violation***

---

[2] *Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015).  The fabrication must be intentional and must be done by an official. *See Id.* at 767 (distinguishing *Cuadra*, 626 F.3d at 814, where school officials and not officers were at fault and *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 441-42 (5th Cir. 2015) where there was no intentional fabrication).

16. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118–19, 122 S. Ct. 587 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297 (1999)). As the invasiveness of a search increases, the Fourth Amendment requires greater justification to be reasonable. *See Illinois v. Lafayette*, 462 U.S. 640, 645, 103 S. Ct. 2605 (1983) ("the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street, but the practical necessities of routine jail administration may even justify taking a prisoner's clothes before confining him"); *United States v. Vega-Barvo*, 729 F.2d 1341, 1344 (11th Cir. 1984) ("As intrusiveness increases, the amount of suspicion necessary to justify the search correspondingly increases.").

17. In this instance, nothing Plaintiff alleges suggests that any of the Officers subjected him to a "public strip search." Plaintiff's only complaint is that the search which was captured on video showed his "genitalia and buttocks on the officer's body worn camera." [Doc. #1 at ¶ 14]. Plaintiff then complained that the video was played during the Motion to Suppress phase of his criminal trial and "twelve jurors saw the body worn camera video of [him] being searched." [*Id.*] Plaintiff complains that "the same video also was seen by employees of the Houston Police Department and employees of the Houston Police Department District Attorney's Office, as well as the staff of the 178th District Court, including the presiding judge." [ Id at ¶ 17]. Plaintiff alleges that "HPD involved Officers,

intentionally and wrongfully subjected [him] to public humiliation for over an hour." [Id at ¶ 18].

18.     The search for the Plaintiff occurred during the time that he was being searched and arrested for participating in criminal activities. The undercover officer's observations were sufficient to provide probable cause for warrantless arrest of the Plaintiff for drug offense committed.

19.     There are numerous cases which have upheld warrantless body cavity searches in these situations. For example, in 2003, the Texas Court of Criminal Appeals considered a case involving a visual body cavity search. *McGee v. State,* 105 S.W.3d 609 (Tex. Crim. App. 2003). The Court considered *Bell v. Wolfish,* 441 U.S. 520 (1979), where the Supreme Court held that a reasonableness inquiry requires a court to balance the need for a particular search against the invasion of the personal rights that the search entailed. *Id*. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted. *Id*. This four-part standard to determine reasonableness is ignored by Plaintiff who relies entirely on the scope of the intrusion and ignores the justification for initiating the search, the manner in which the search was conducted, and place where it was conducted.

20.     In *McGee* the Court held the inquiry does not end with the intrusiveness of the search. *McGee v. State,* 105 S.W.3d, at 616. After considering the scope of the intrusion, the manner in which the search was conducted, the justification for the search, and where the search was conducted, the Court held that a visual body cavity search, where the defendant was required to bend over and spread his buttocks for inspection, met three

of the four requirements. *Id.*, at 618. The search was not violent, there was sufficient justification (incident to an arrest), and the search was conducted at a fire station. *Id.* The issue of the scope of the search was outweighed by the latter three requirements. Here, the search was conducted after obtaining a warrant, at a hospital, and by a licensed physician. There was no violence involved and the actual search was conducted privately with a minimum number of police personnel present.

21.     Like *McGee*, the search of Plaintiff under these similar facts was justified. The scope of the search Plaintiff's search was limited to the Officers looking into the Plaintiff's pants area; was by the Officer using his eyes only; the justification was to secure the evidence and to check for weapons; and the location was on the scene at the police vehicle just prior to placing the Plaintiff in the back seat of the police vehicle.

22.     While there may be a body of law that body-cavity searches should rarely, if ever be conducted in a public place, *McGee*, at 617 (citing *Logan v. Shealy,* 660 F.2d 1007, 1014 (4th Cir. 1981)), Plaintiff has not established under the facts alleged in this case that this is one of them.

### *Plaintiff's claims are barred by the independent intermediary doctrine*

23.     Houston cannot be held liable for an arrest that was supported by probable cause. When "facts supporting an arrest are placed before a magistrate, judge, or other independent intermediary" and that intermediary issues a warrant, then the intermediary's decision to cause a warrant to be issued "breaks the chain of causation for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011). The independent intermediary doctrine becomes relevant when—as here—a plaintiff's claims

12

depend on a lack of probable cause to arrest him.[3]  Under this doctrine, "even an officer who acted with malice . . . will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016) (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)). The Fifth Circuit's "precedents have applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime."[4]

24.     Plaintiff does not allege any exceptions to the independent intermediary; therefore, Plaintiff's claims are barred.

### *No Monell Liability*

25     Plaintiff has not alleged facts which could show that any official policy or custom of the City caused any violation of his constitutional rights, as required to support a § 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

26.     *Monell* established that a municipality cannot be held liable for civil rights violations under a theory of *respondeat superior* or vicarious liability. *Monell*, 436 U.S. at 694; *and see Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In other

---

[3] *Buehler*, 824 F.3d at 553-54 (citing *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (applying the independent intermediary doctrine to Fourth Amendment claims); *Russell v. Altom*, 546 F. App'x 432, 436-37 (5th Cir. 2013) (applying the doctrine to First Amendment claims)).

[4] *Buehler*, 824 F.3d 548, 553-54, citing *Taylor v. Gregg*, 36 F.3d 453, 455, 456-57 (5th Cir. 1994) (applying doctrine where presentment to magistrate and grand jury occurred after arrest), overruled on other grounds by *Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc); *Russell*, 546 F. App'x at 436-37;  *Smith*, 670 F.2d at 526 ("The constitution does not guarantee that only the guilty will be arrested.").

words, a city is not subject to liability merely for the wrongdoings, if any, of its employees. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). The alleged constitutional violations must be "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578.

27.     A plaintiff who brings a § 1983 against a municipality bears the burden of demonstrating that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis orig.). Deliberate conduct requires the "execution of a government's policy or custom, whether made by its lawmakers or by those who may fairly said to represent official policy." *Monell*, 436 U.S. at 694; *Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992). Thus, to defeat dismissal of a § 1983 claim against a municipality, a plaintiff must plead specific facts supporting each of the three essential elements of the claim: (1) an official policy or custom; (2) promulgated by the municipal policymaker; (3) which was the actual cause and "moving force" behind the alleged violation of constitutional rights. *See Baughman v. Garcia*, 254 F. Supp. 3d 854, 885 (S.D. Tex. 2017), *aff'd sub nom. Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019) (citing *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017); *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015)); *and see Piotrowski*, 237 F.3d at 578. The standard is a stringent one, and all of the elements must be established to impose liability. Plaintiff here, however, has not alleged facts to support any of the essential elements of a *Monell* claim.

14

28.     Plaintiff's complaint contains only conclusory allegations and is devoid of any specific facts that state plausible claims against the City. Plaintiff claims the City violated his Fourth and Fourteenth Amendment rights. [Doc. #1 at ¶32].

29.     The allegations he pleads to support those claims are (1) that the Houston Police Department has a general policy, pattern and/or practice of not appropriately disciplining officers for their misconduct, thereby sanctioning the officers' actions, which amounted to a departmental policy of overlooking constitutional violations (2) Houston Police Department's failure to supervise and train its officers, and the Houston Police Department's willful blindness towards the constitutional violations committed by its employees, constitute gross negligence and/or deliberate and conscious indifference to people's rights, including the right to be free from unreasonable search and seizure and the (3) Even if the Houston Police Department's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy (4) In the present case, the Houston Police Department's formal and informal actions in overlooking, hiding and/or tacitly encouraging officer misconduct through the Houston Police Department officers, and the IAD Department, reflect a policy, practice custom and procedure authorizing and allowing the use of actions that violated the civil rights of Plaintiff. [Id. at ¶¶ 33,34,35].  However, there are no properly pled facts that support these conclusory allegations, much less facts that rise to the high burden of *Monell* liability.

### *Insufficient Allegations: Custom, Policy, Practice, and Procedure.*

30. Plaintiff's complaint has multiple fatal deficiencies concerning the existence of a custom, policy, practice, or procedure at the City that violated his constitutional rights. For a municipality to be liable under *Monell, "*the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (*citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). A plaintiff must prove that a municipal policymaker promulgated an official policy that was the moving force behind the constitutional violation. *Id.* But before a plaintiff can try to prove these elements to a fact finder, his or her complaint must plead legally sufficient facts to support them. Plaintiff's pleadings utterly fail.

31. Firstly, Plaintiff's pleadings are conclusory. Conclusory allegations or legal conclusions masquerading as factual conclusions are not adequate to prevent dismissal. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993)). Plaintiff does not specifically plead whether he is complaining of actual written policies or widespread customs or practices. Plaintiff does not state who at the City had the authority to promulgate any such policy (presumable because Plaintiff does not actually identify any policy).

32. To the extent Plaintiff's pleadings could be read to assert a claim for malicious prosecution, abuse of process, false arrest, or any other such claim, Plaintiff's allegations fail to state any facts on which plausible relief could be granted. Plaintiff alleges no facts as to how he was the subject of abusive process, false arrest, or was maliciously

16

prosecuted. More importantly, Plaintiff alleges no facts that would tie any such action to the City under *Monell.* [*See* Doc # 1  28 at ¶¶ 33-42.]

> 33.  This Court recently rejected conclusory allegations similar to Plaintiff's:
>
> > [The plaintiff] fails to meet his pleading burden on the first element. It isn't even clear whether the complained-of policy is written down or an unwritten custom. Instead, he only alleges that Harris County "permits its officers to perform illegal and improper conduct," and that this "failure to act shows a policy, procedure, custom, practice, or protocol of permitting officers (particularly Hartley) to use unjustifiable and unreasonable force without consequence." *Id.* at ¶¶ 106–07. As with both Counts 2 and 5, this is wholly conclusory. Taylor doesn't plead specific facts about the alleged policy. He simply states that such a policy exists based only on Hartley's conduct. This is insufficient.

*Taylor v. Hartley,* 488 F. Supp. 3d 517, 541–42 (S.D. Tex. 2020); *see also May v. City of Arlington, Tex.,* 398 F. Supp. 3d 68, 79–80 (N.D. Tex. 2019), supplemented, 3:16-CV-1674-L, 2019 WL 1429662 (N.D. Tex. Mar. 28, 2019) (granting 12(b)(6) in part because conclusory allegations, including "the City failed to train and supervise its police officers, overlooked and covered up officer misconduct, failed to discipline officers for their misconduct, and turned a 'blind eye' to constitutional violations of its police officers" and "the City had a policy or custom of authorizing and tacitly encouraging the use of excessive force by its police officers because the Internal Affairs Division of the Arlington Police Department ("APD"), past and present chiefs of police of the APD, and former and present mayors and city councils of the City have taken certain unspecified formal and informal actions that have overlooked misconduct of its police officers against citizens").

34.     Secondly, to the extent Plaintiff is relying on unwritten policies, customs or practices, he must plead specific facts showing the existence of "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808-09 (5th Cir. 2017). Plaintiff's complaint lacks *any* facts that show *any* custom, pattern or practice that was the moving force behind *any* supposed violation of Plaintiff's constitutional rights.

35.     "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009). The Fifth Circuit emphasizes that for a court to find a pattern or practice sufficiently pervasive to subject a municipality to liability that a plaintiff must show a significant number of other instances, placed in context of the size of the police department and criminal incidents investigated. *E.g.*, *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017) (finding three arrests over three and a half years did not establish a pattern of constitutional violations); *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (holding two reports of violations of a policy in four years in the City of Houston did not amount to pattern); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851–52 (5th Cir. 2009) (holding 27 complaints of excessive force over a period of three years in department with more than 1,500 officers did not constitute a pattern); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding eleven incidents cannot support a pattern of illegality in one of the Nation's largest cities and police forces).

36. Plaintiff must also allege with specificity that the other instances are fairly similar to what ultimately transpired with him. They require "similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Clark v. Thompson*, 850 Fed. Appx. 203 (5th Cir. 2021) (citing *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

### *Insufficient Allegations: Failure to train*

37. Regarding Plaintiff's training based *Monell* liability claim, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, (2011). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities. . . .'" *Id.* at 62. Plaintiff must allege with specificity how the City's training program is defective in relation to the tasks that the particular officer has to perform. *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020). Plaintiff must identify a specific training program and show how it is inadequate. Without a sufficiently specified training program or defects, the plaintiff "necessarily hasn't shown the *causation* required" for a failure to train *Monell* claim. *Id.* at 536 (emphasis in original).

38. This Court found the pleadings in *Taylor* insufficient to overcome a motion to dismiss—and those pleadings were far more specific that Howard's. In *Taylor*, the plaintiff specifically alleged that (1) the officer's training was defective because it did not include sufficient de-escalation or use-of-force training, and (2) that de-escalation training is common practice in police departments across Texas. This Court found such allegations "wholly conclusory" as "neither alleges specific facts about the training protocols in Harris

19

County nor describes any deficiencies in the program in light of [the officer's] assigned duties." *Id.* at 535. The deficient allegations in *Taylor* are portly compared to this case's bare bones pleadings. Plaintiff's pleading fails to (1) identify a specific training program with specific deficits that (2) relate to that particular officer's tasks that (3) are casually related to Plaintiff's claims.

39.     Lastly, Plaintiff must also plead facts demonstrating that Houston adopted the specifically alleged training program with "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989). The failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000) (*citing Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Plaintiff pleads no such facts. Therefore, Plaintiff's complaint fails to state a claim for relief related to training and must be dismissed accordingly.

## II.     Governmental immunity protects Houston from tort allegations

40.     The Texas Tort Claims Act governs waiver of immunity for tort suits against governmental units. *See* TEX. CIV. PRAC. & REM. CODE § 101.025; *Reata Constr. Corp.,* 197 S.W.3d at 378. The TTCA provides only a limited immunity waiver for tort suits arising from certain narrowly defined circumstances: (1) the use of motor-driven vehicles or equipment, (2) the condition or use of personal property, and (3) the condition or use of real property (premises defects).  *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1); *Tex. Dep't Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Garcia,* 253 S.W.3d at 655.

And it governs all common-law tort theories alleged against governmental units, regardless of whether its limited waiver applies. *See Franka v. Velasquez*, 332 S.W.3d 367, 378 (Tex. 2011); *Garcia*, 253 S.W.3d at 659. Plaintiff's allegation of gross negligence does not state a claim within any limited waiver of the City's governmental immunity under the TTCA.

41. The TTCA expressly retains the City's immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort." *See* TEX. CIV. PRAC. & REM. CODE §101.057(2); *Franka*, 332 S.W.3d at 375. False arrest and malicious prosecution are intentional torts. *See, e.g., City of San Antonio v. Dunn*, 796 S.W.2d 258 (Tex. App. – San Antonio 1990, writ denied) (false arrest); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515 (Tex. 1997) (malicious prosecution). Therefore, the TTCA does not waive the City's immunity for any of Plaintiff's Texas law claims of false arrest, malicious prosecution and gross negligence, because these are intentional torts which are expressly excluded from the limited immunity waiver. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2). Houston is entitled to dismissal of those claims, with prejudice.

## CONCLUSION AND PRAYER

For the reasons stated, Plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted against Houston. Defendant City of Houston respectfully prays that the honorable Court grant this motion and dismiss with prejudice all Plaintiff's claims against them and grant all other relief to which Defendant may be entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

CHRISTY L. MARTIN
Section Chief, Torts/Civil Rights

By: */s/ Michelle C. Taylor*
Michelle C. Taylor
Senior Assistant City Attorney
Attorney in Charge
SBN: 224060889
FBN: 3773284
Tel. (832) 393-6248

Michelle.Taylor2@houstontx.gov
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368

**ATTORNEYS FOR DEFENDANT
City of Houston**

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2024, a true and correct copy of the foregoing document, and any attachments, were delivered to all opposing counsel(s) by electronic filing of same in accordance with the District ECF's service rules, and alternatively via certified mail, return receipt requested, and/or e-mail or facsimile transaction to:

Andre A. Wheeler
P.O. Box 682705
Houston, Texas 77268
Andrewheeler_esq@yahoo.com

*/s/ Michelle C. Taylor*
Michelle C. Taylor

## **<u>VERIFICATION</u>**

I verify that the documents attached as Exhibits 1-8 contain true and correct copies of the documents they purport to be.

April 11, 2023                                      */s/ Michelle C. Taylor*
Date                                                    Michelle C. Taylor