IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAYSHAWN BATISTE, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:24-cv-00368 |
| | § | |
| CHIEF TROY FINNER, Individually | § | |
| SGT. D. RUSSELL, Individually | § | |
| OFFICER F. RAHIMZADEH, | § | |
| Individually, | § | |
| OFFICER G. R. GREENLEA, | § | |
| Individually, | § | |
| OFFICER C. DONOVAN, | § | |
| Individually and | § | |
| THE CITY OF HOUSTON, | § | |
|     Defendants. | § | |

## PLAINTIFF'S OPPOSITION IN RESPONSE TO DEFENDANT CITY OF HOUSTON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE ANDREW S. HANEN:**

NOW COMES PLAINTIFF Rayshawn Batiste, responding to the City of Houston's motion to dismiss, and submits this Response in Opposition to the Motion of Defendant City of Houston Motion to Dismiss for Failure to State a Claim and would respectfully show the Court the following:

## PLAINTIFF OBJECTS TO DEFENDANT'S PURPORTED "FACTS"

1. The Plaintiff is the author and master of his own complaint and, of course, does not agree to any of Defendant City of Houston's recitation of Plaintiff's facts contained in its motion to dismiss, unless those facts agree 100% with Plaintiff's complaint facts set forth below and unless

1

those factual allegations are given all reasonable inferences and in a light most favorable to the Plaintiff.

<u>**Applicable Legal Standards**</u>

Defendant City of Houston, Texas has filed a motion to dismiss Rayshawn Batiste's suit under Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284-85 (5th Cir. 1993); *Lindquist v. City of Pasadena, Texas,* 525 F.3d 383, 386 (5th Cir. 2008). The traditional pleading standard required a district court to accept all of the allegations of a complaint as true, and allowed dismissal only if there [is] no set of facts on which [the plaintiff] would be entitled to relief" *Ashcroft v. Iqbal,* 556 U.S. 662, 669 (2009)(*discussing Conley v. Gibson*, 355 U.S. 41 (1957)). Under *Iqbal* a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal,* 556 U.S. at 678 (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 644 (2007)). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (internal citation and footnote omitted). The Court should deny a motion to dismiss even if it appears *"that a recovery is very remote and unlikely." Id.* (f*ollowing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

3. The plausibility standard of *Twombly* and *Iqbal* does not amount to a "heightened pleading standard" for 42 U.S.C. § 1983 cases. Rather, the Rule 8 fair notice standard still applies.

*Ericksonv. Pardus*, 551 U.S. 89, 94 (2007)(per curiam)(the [Complaint] need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests."); s*ee also Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 513 (2002)(Federal Rule of Civil Procedure 9(b) does not apply to 42 U.S.C. § 1983).

4.      Though the defendant police officers' acts are egregious, federal civil rights law does not hold the officer's employer, City of Houston, Texas, liable unless they were acting pursuant to the policy or custom. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978).

5.      A plaintiff may recover damages from a governmental entity such as the City of Houston, Texas under 42 U.S.C. § 1983 only if his or her constitutional injuries are caused by execution of the entity's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy under *Monell v. Department of Soc. Svcs.* (436 U.S. 658 (1978)). Liability may also arise in the form of a widespread practice that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).  A City's training of officers can lead to liability. *City of Canton*, *Ohio v*. *Harris*, 489 U.S. 378 (1989).  A custom may be shown to exist where there is a pattern of similar incidents, but not from isolated cases.  Actual or *constructive* knowledge of the policy or custom on the part of a policy level official is sufficient to support imposition of *Monell* liability on the defendant City of Houston, Texas.  *Piotrowski, supra.*

### Facts

6.      On February 2, 2022, Defendants, Seargent D. Russell; Officer F. Rahimzadeh; Officer Garrett Greenlea; and Officer Christopher Donovan along with Officer Dylan Schad, all Officers of the City of Houston Police Department were conducting an undercover narcotics operation at

3

the Lucky Store located at 8900 S. Braeswood Blvd., Houston, 77074. Officer F. Rahimzadeh, working as an undercover officer, approached a male, later to be identified as Suspect, Brandon Dunbar, in front of the store and asked him if he could get her some "hard." Hard is a street name for crack cocaine. The male responded in the affirmative and Officer Rahimzadeh gave Brandon Dunbar a marked twenty-dollar bill.

7. The male entered the store and according to Officer Rahimzadeh, she saw Brandon Dunbar briefly speak to another male, later identified as Rayshawn Batiste, in the store. Rayshawn Batiste had entered the store before Officer Rahimzadeh arrived in front of the store. After buying some snacks, Rayshawn Batiste left the store and was walking across the store parking lot toward his residence. Soon thereafter, the first male, Brandon Dunbar, exited the store and gave crack cocaine to Officer Rahimzadeh.

8. Officer Rahimzadeh communicated to the surveillance team and marked unit officers to move in and detain Brandon Dunbar and Rayshawn Batiste. It should be noted that Officer Rahimzadeh testified in the criminal trial against Rayshawn Batiste on March 9, 2023, that she could only see Brandon Dunbar and Rayshawn Batiste from about the shoulder to their heads. Officer Rahimzadeh testified that the conversation between the two men was brief and that she did not see a hand-to-hand transaction occur between them. A hand-to-hand transaction under the circumstances could have given Defendants reasonable suspicion to detain Plaintiff for an investigation only.

9. Rayshawn Batiste had stopped walking because he was looking back to see what was going on at the store with all of the police vehicles arriving. Officer Greenlea called out to Rayshawn Batiste for him to come back. Officer Greenlea walked to Rayshawn Batiste and detained

Rayshawn Batiste by handcuffing him. Rayshawn Batiste was taken back to the store to a marked police vehicle.

10. Rayshawn Batiste was immediately strip searched for minutes by Officer Greenlea. Plaintiff's shoes were removed, his socks were removed, his pockets were searched, his belongings were seized. Officer Greenlea gave Rayshawn Batiste's money to Officer Dylan Schad. Officer Greenlea then physically searched Rayshawn Batiste's genitals, as well as his buttocks while using a flashlight. Rayshawn Batiste's genitalia and buttocks can clearly be seen on Officer Greenlea's body worn camera video. Officer Greenlea grabbed the front crotch of Plaintiff and shook it looking for contraband.

11. Rayshawn Batiste was then placed in the back seat of the marked patrol vehicle. Officer Greenlea nor any of the other officers attempted to conduct an investigation into whether Rayshawn Batiste was involved in the drug transaction initiated by Officer Rahimzadeh. None of the HPD officers on the scene asked Rayshawn Batiste any questions or attempted to check the store's internal surveillance camera video to determine whether Rayshawn Batiste was involved in the drug transaction with Brandon Dunbar before thoroughly strip-searching Rayshawn Batiste's person, before seizing his personal property and seizing his person.

12. Officer Dylan Schad began counting and going through Rayshawn Batiste's money and searching for the marked twenty dollar bill that Officer Rahimzadeh had given to Brandon Dunbar for the purchase of the crack cocaine. Officer Schad asked Officer Garrett Greenlea for the serial numbers of the marked bills. Officer Greenlea went to his patrol vehicle, retrieved his cell phone and pulled up an image of the marked bills Officer Rahimzadeh had been issued for the narcotics sting.

13.     Officer Dylan Schad and Officer Garrett Greenlea looked through the money Rayshawn Batiste had on his person for over twelve and half minutes searching for the marked bill. The marked bill could not be found. The marked bill was not found in the money seized from Brandon Dunbar as well. It should be noted that a third male was handcuffed and detained from inside the store but for some reason this individual's identity or why he was detained is not mentioned anywhere in the offense report. All of these events are documented on body worn camera videos of Officer Greenlea and Officer Schad.

14.     Eventually, Seargent Russell pulled some papers, which were photocopies of marked bills, and what appears to be a twenty-dollar bill, from his pocket. Seargent Russell then appears to hand something to Officer Schad out of view of Officer Schad's body worn camera. Seargent Russell then pointed to a bill on the photocopy that he had pulled from his pocket and told Officer Schad, "Edward Henry 5, 3 is the first three." Seargent Russell then says, "Got it?" and Officer Schad then immediately finds the alleged marked bill in the cash.

15.     At about the 12:38 time stamp on Officer Greenlea's body worn camera video, it pauses and the video jumps forward. This happens right at the moment that Seargent Russell is handing something to Officer Schad while Officer Greenlea is walking by Seargent Russell and Officer Schad. It is obvious that the video has been edited to remove some content that Officer Greenlea's body worn camera had recorded. Body worn camera videos should play continuously without any pauses or skips. Rayshawn Batiste was charged with Possession of a Controlled Substance and taken to jail after Officer Schad finally allegedly found the marked bill, a twenty dollar bill, out of $260.00 in twenty dollar bills seized from Plaintiff's pocket. Plaintiff had to post a bond and hire an attorney to defend the charge.

16.    On March 9, 2023, a jury trial commenced in the 178th District Court of Harris County. Defense counsel filed a motion to suppress the evidence because of an illegal detention, illegal search and illegal seizure of Rayshawn Batiste's personal property and his person. The motion was carried along with the trial. Twelve jurors saw the body worn camera video of Rayshawn Batiste being searched. Defense counsel requested for the trial judge to order prosecutors to blur the genitals and buttocks of Plaintiff, however the jury still were able to see Plaintiff's genitals and buttocks.

17.    The jury saw video footage of Rayshawn Batiste's penis, pubic hair and his buttocks. This same video also was seen by employees of the Houston Police Department and employees of the Harris County District Attorney's Office, as well as staff of the 178th District Court, including the presiding judge.

18.    After Officer Rahimzadeh and Officer Greenlea testified, the presiding judge watched Officer Greenlea's body worn camera video during a break and she was ready to hear argument on the motion to suppress. Defense counsel argued the motion to suppress to the Court, the judge found that the detention, search and arrest of Rayshawn Batiste exceeded the scope of reasonable suspicion, there was no probable cause, the officer's conduct was illegal and she granted the motion to suppress evidence. The State immediately dismissed the case against Rayshawn Batiste.

19.    Defendants, Seargent Russell, Officer Rahimzadeh, Officer Greenlea, and Officer Donovan along with Officer Dylan Schad, intentionally and wrongfully subjected Rayshawn Batiste to public humiliation and they violated his rights under the Texas and United States Constitution.

**Argument**

20.      The Chief of Police clearly possesses the policymaking authority of the City of Houston, Texas with respect to police policy, procedure, training and discipline, so his actual or constructive knowledge of the policy or custom is sufficient to support imposition of *Monell* liability on defendant City of Houston. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

21.      The City of Houston, through its policymaker has ratified a long history of Houston Police Officers conducting illegal detentions, unreasonable searches, and illegal arrests. The City of Houston Chief of Police Troy Finner, past Chiefs of Police and staff back to at least January 1, 2000, were aware of the many instances of unlawful detentions, unreasonable searches, and illegal arrests but have not retrained or disciplined officers such that these unconstitutional acts remain a custom and practice at the Houston Police Department and the City of Houston.

A short but vast list of past incidents are as follows:

**Prior Incidents**

On April 13, 2008, after over four years of federal litigation, the City of Houston reached a settlement with over one hundred plaintiffs in the infamous "Kmart Raid" when Houston police officers illegally detained 278 individuals, at an open Sonic Drive-In and Super Kmart store, without probable cause or reasonable suspicion that they had committed a crime. The charges against those arrested were dropped, the raid received nationwide press, dozens of officers were disciplined, some were fired, and one HPD Officer--the alleged ringleader--was put on criminal trial.

The Plaintiffs complained that Defendant violated their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution when they were maliciously, unreasonably, and illegally seized, detained, and assaulted by HPD

officers. The  Plaintiffs' illegal seizure, detention and assault were the result of the City of Houston's policy, practice, custom and procedure of detaining and searching individuals without reasonable suspicion and poor training, supervision, and discipline.

On August 15, 2002, the Houston Police Department detained around twenty (20) people without reasonable suspicion or probable cause at a Sonic Drive-In Restaurant on Westheimer in Houston Texas.

On August 16, 2002, the Houston Police Department detained 278 people without reasonable suspicion or probable cause in the infamous "Kmart Raid" at a Sonic Drive-In and the parking lot of a Super Kmart store. The charges against those arrested were dropped, the raid received nationwide press, dozens of officers were disciplined--some fired--and an HPD Officer--the alleged ringleader--was put on criminal trial. On April 13, 2008, after over four years of highly publicized federal litigation involving the top HPD officials the City of Houston reached a settlement with over one hundred plaintiffs.

On November 10, 2007, over one hundred individuals were at a legal after-hours club, Esmeralda's, located at 9275 Richmond Avenue, Houston, Texas. Around 2:30 or so about thirty Houston Police Department officers rushed into the club and announced there was a "raid." From that point on no patron was free to leave. The people were subjected to field sobriety testing, specifically the Horizontal Gaze Nystagmus ("HGN") test and people were searched. Most of the hundred or so patrons were detained for several hours and then let go. The HPD officers did not have probable cause or reasonable suspicion to search or detain most of the individuals present.

22.     Plaintiff's First Amended Original Complaint facts (supra) sufficiently alleges other instances of unlawful detentions, unconstitutional searches, and unlawful arrests by the City of Houston police officers. City of Houston Police officers are governed by the City's Chief of Police and mayor. Furthermore, they both are subject to discipline by the City of Houston Chief of Police after investigations by HPD's Internal Affairs Department.

23.     The City of Houston through Houston Police Department officers have illegally detained and unlawfully searched thousands of people without reasonable suspicion or probable cause for years in many separate incidents.

24.     Hiring, training, supervisory failures and ratification are evident in the numerous incidents identified above. Policymaker indifference is evidence of the existence of the custom or policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

**Standard for Rule 12(b)(6) Dismissal**

25.     Dismissal of a case under Rule 12(b)(6) for failure to state a claim is not favored by the law. *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 926 (5th Cir. 1988); *see* FED. R. CIV. P. 12(b)(6). A Plaintiff's complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts" to entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996) ("The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims."); *Adolph v. Federal Emergency Mgmt Agency*, 854 F.2d 732, 735 (5th Cir. 1988) (holding that a court may dismiss only if it "appears to a certainty" that no relief can be granted under any set of facts provable in support of a plaintiff's allegations; or if the allegations, accepted as true, do not present a claim for legally obtainable relief).

26. In considering a motion to dismiss, the Court must accept as true the non-movant's well-pleaded factual allegations and any reasonable inferences to be drawn from them. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Generally, the Court may not look beyond the pleadings in its decision. *Mahone,* 836 F.2d at 936.

27. Under the Federal Rules, only "notice pleading" is required. *See* FED. R. CIV. P. 8(a) (requiring a "short and plain statement" of the claim). Scattershot, catch-all pleading, however, is highly disfavored in the federal courts. *See, e.g., Ward v. Life Investors Ins. Co. of Am.*, 383 F. Supp. 2d 882, 889 (S.D. Miss. 2005) ("[T]he Fifth Circuit has shown a distaste for complaints such as these that are essentially a shotgun approach to pleadings. . . where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick.") (internal quotations omitted).

**<u>Municipal Liability</u>**

28. Under 42 U.S.C. § 1983 That statute makes liable "[e]very person" who, under color of state law, violates federal constitutional rights. For this purpose, municipal entities like the City of Houston qualify as "persons." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978). The City of Houston itself must have caused the violation. Id. Thus, to state a § 1983 claim against The City of Houston, the amended complaint must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an "official policy" attributable to The City of Houston's policymakers (3) "was the moving force" behind it. *Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018); *Groden v. City of Dallas*, 826 F.3d 280, 283–85 (5th Cir. 2016)

29. Plaintiff adequately allege an "official municipal policy" on which § 1983 liability may rest. *See Monell*, 436 U.S. at 691. To be clear, the argument is not that the City of Houston's written

search, seize and arrest policies are facially unconstitutional or that they caused the alleged constitutional violation by themselves. Rather, the "official municipal policy" on which Plaintiff attempts to hang *Monell* liability is the City of Houston's alleged policy of providing no training whatsoever regarding its employees' legal duties not to conduct unreasonable searches and ratifying its officers' behavior when they do conduct unreasonable searches, seizures and illegal arrests. *General Order of the Houston Police Department issued on January 20, 2021 as authorized by the section 34-23 of the City of Houston Code of Ordinances. (The Policy)*

30.     The Supreme Court established the "failure to train" method of proving municipal liability in *City of Canton v. Harris*, 489 U.S. 378, 386–92 (1989). Under *Canton*, when a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes "official policy" that can support municipal liability if it "amounts to deliberate indifference." Id. at 388. To prove deliberate indifference at trial, Plaintiff must show that, "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." Id. at 390. Deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. Id. (construing *Canton*, 489 U.S. at 390 & n.10); accord *Brown v. Bryan Cty.*, 219 F.3d 450, 459–61 (5th Cir. 2000) (same); see also, e.g., *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).

**Conclusion**

31.    Plaintiff has a viable *Monell* claim against the City of Houston based on its policy, custom and ratification of unlawful detentions, unreasonable searches and unlawful arrests by the Houston Police Department.

WHEREFORE, Plaintiff respectfully requests that the Defendant's Motion to Dismiss be DENIED and in the alternative, that Plaintiff be granted the opportunity, if the Court intends to grant the motion to dismiss, for leave to amend to state the allegations of fact more clearly and in greater detail and abundance, and Plaintiff further requests all other and further relief to which he may be justly or equitably entitled.

Respectfully submitted,

By:/s/ *André A. Wheeler*
André A. Wheeler
State Bar No: 24042341
Federal Bar No.: 610759
P. O. Box 682705
Houston, TX 77268
(713) 660-9619 Phone
(281) 715-4627 Fax
andrewheeler_esq@yahoo.com
ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2024, a true and accurate copy of the foregoing document was delivered to opposing counsel by electronic service in compliance with the District ECF rules.

Michelle Taylor
City of Houston Legal Department
P. O. Box 368
Houston, Texas 77001
Michelle.taylor2@houstontx.gov

*/s/André A. Wheeler*
André A. Wheeler