| | | |
|---|---|---|
| RAYSHAWN BATISTE, | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:24-cv-00368 |
| | § | |
| CHIEF TROY FINNER, Individually | § | |
| SGT. D. RUSSELL, Individually | § | |
| OFFICER F. RAHIMZADEH, | § | |
| Individually, | § | |
| OFFICER G. R. GREENLEA, | § | |
| Individually, | § | |
| OFFICER C. DONOVAN, | § | |
| Individually and | § | |
| THE CITY OF HOUSTON, | § | |
|     Defendants. | § | |

## PLAINTIFF'S OPPOSITION IN RESPONSE TO DEFENDANTS TROY FINNER, SGT. D. RUSSELL and F. RAHIMZADEH'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE ANDREW S. HANEN:**

NOW COMES PLAINTIFF Rayshawn Batiste, responding to Defendants Troy Finner, Sgt. D. Russell and F. Rahimzadeh's motions to dismiss, and submits this Response in Opposition to the Motions to Dismiss for Failure to State a Claim and would respectfully show the Court the following:

## PLAINTIFF OBJECTS TO DEFENDANTS' PURPORTED "FACTS"

1. The Plaintiff is the author and master of his own complaint and, of course, does not agree to any of Defendants recitation of Plaintiff's facts contained in its motion to dismiss, unless those

facts agree 100% with Plaintiff's complaint facts set forth below and unless those factual allegations are given all reasonable inferences and in a light most favorable to the Plaintiff.

## <u>APPLICABLE LEGAL STANDARDS</u>

2       Defendants Troy Finner, Sgt. D. Russell and F. Rahimzadeh have filed motions to dismiss Rayshawn Batiste's First Amended Complaint under Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284-85 (5th Cir. 1993); *Lindquist v. City of Pasadena, Texas,* 525 F.3d 383, 386 (5th Cir. 2008). The traditional pleading standard required a district court to accept all of the allegations of a complaint as true, and allowed dismissal only if there [is] no set of facts on which [the plaintiff] would be entitled to relief" *Ashcroft v. Iqbal,* 556 U.S. 662, 669 (2009)(*discussing Conley v. Gibson*, 355 U.S. 41 (1957)). Under *Iqbal* a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal,* 556 U.S. at 678 (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 644 (2007)). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (internal citation and footnote omitted). The Court should deny a motion to dismiss even if it appears *"that a recovery is very remote and unlikely." Id.* (f*ollowing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

3.       The plausibility standard of *Twombly* and *Iqbal* does not amount to a "heightened pleading standard" for 42 U.S.C. § 1983 cases. Rather, the Rule 8 fair notice standard still applies.

*Ericksonv. Pardus*, 551 U.S. 89, 94 (2007)(per curiam)(the [Complaint] need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.");); s*ee also Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 513 (2002)(Federal Rule of Civil Procedure 9(b) does not apply to 42 U.S.C. § 1983).

**FACTS**

4.      On February 2, 2022, Defendants, Seargent D. Russell; Officer F. Rahimzadeh; Officer Garrett Greenlea; and Officer Christopher Donovan along with Officer Dylan Schad, all Officers of the City of Houston Police Department were conducting an undercover narcotics operation at the Lucky Store located at 8900 S. Braeswood Blvd., Houston, 77074. Officer F. Rahimzadeh, working as an undercover officer, approached a male, later to be identified as Suspect, Brandon Dunbar, in front of the store and asked him if he could get her some "hard." Hard is a street name for crack cocaine. The male responded in the affirmative and Officer Rahimzadeh gave Brandon Dunbar a marked twenty-dollar bill.

5.      The male entered the store and according to Officer Rahimzadeh, she saw Brandon Dunbar briefly speak to another male, later identified as Rayshawn Batiste, in the store. Rayshawn Batiste had entered the store before Officer Rahimzadeh arrived in front of the store. After buying some snacks, Rayshawn Batiste left the store and was walking across the store parking lot toward his residence. Soon thereafter, the first male, Brandon Dunbar, exited the store and gave crack cocaine to Officer Rahimzadeh.

6.      Officer Rahimzadeh communicated to the surveillance team and marked unit officers to move in and detain Brandon Dunbar and Rayshawn Batiste. It should be noted that Officer Rahimzadeh testified in the criminal trial against Rayshawn Batiste on March 9, 2023, that she

could only see Brandon Dunbar and Rayshawn Batiste from about the shoulder to their heads. Officer Rahimzadeh testified that the conversation between the two men was brief and that she did not see a hand-to-hand transaction occur between them. A hand-to-hand transaction under the circumstances could have given Defendants reasonable suspicion to detain Plaintiff for an investigation only.

7.      Rayshawn Batiste had stopped walking because he was looking back to see what was going on at the store with all of the police vehicles arriving. Officer Greenlea called out to Rayshawn Batiste for him to come back. Officer Greenlea walked to Rayshawn Batiste and detained Rayshawn Batiste by handcuffing him. Rayshawn Batiste was taken back to the store to a marked police vehicle. *See Plaintiff's Exhibit 1*

8.      Rayshawn Batiste was immediately strip searched for minutes by Officer Greenlea. Plaintiff's shoes were removed, his socks were removed, his pockets were searched, his belongings were seized. Officer Greenlea gave Rayshawn Batiste's money to Officer Dylan Schad. Officer Greenlea then physically searched Rayshawn Batiste's genitals, as well as his buttocks while using a flashlight. Rayshawn Batiste's genitalia and buttocks can clearly be seen on Officer Greenlea's body worn camera video. Officer Greenlea grabbed the front crotch of Plaintiff and shook it looking for contraband. *See Plaintiff's Exhibit 1*

9.      Rayshawn Batiste was then placed in the back seat of the marked patrol vehicle. Officer Greenlea nor any of the other officers attempted to conduct an investigation into whether Rayshawn Batiste was involved in the drug transaction initiated by Officer Rahimzadeh. None of the HPD officers on the scene asked Rayshawn Batiste any questions or attempted to check the store's internal surveillance camera video to determine whether Rayshawn Batiste was involved

4

in the drug transaction with Brandon Dunbar before thoroughly strip-searching Rayshawn Batiste's person, before seizing his personal property and seizing his person. *See Plaintiff's Exhibit 1*

10. Officer Dylan Schad began counting and going through Rayshawn Batiste's money and searching for the marked twenty dollar bill that Officer Rahimzadeh had given to Brandon Dunbar for the purchase of the crack cocaine. Officer Schad asked Officer Garrett Greenlea for the serial numbers of the marked bills. Officer Greenlea went to his patrol vehicle, retrieved his cell phone and pulled up an image of the marked bills Officer Rahimzadeh had been issued for the narcotics sting. *See Plaintiff's Exhibit 1*

11. Officer Dylan Schad and Officer Garrett Greenlea looked through the money Rayshawn Batiste had on his person for over twelve and half minutes searching for the marked bill. The marked bill could not be found. The marked bill was not found in the money seized from Brandon Dunbar as well. It should be noted that a third male was handcuffed and detained from inside the store but for some reason this individual's identity or why he was detained is not mentioned anywhere in the offense report. All of these events are documented on body worn camera videos of Officer Greenlea and Officer Schad. *See Plaintiff's Exhibit 4*

12. Eventually, Seargent Russell pulled some papers, which were photocopies of marked bills, and what appears to be a twenty-dollar bill, from his pocket. Seargent Russell then appears to hand something to Officer Schad out of view of Officer Schad's body worn camera. Seargent Russell then pointed to a bill on the photocopy that he had pulled from his pocket and told Officer Schad, "Edward Henry 5, 3 is the first three." Seargent Russell then says, "Got it?" and Officer Schad then immediately finds the alleged marked bill in the cash. *See Plaintiff's Exhibit 4*

13. At about the 12:38 time stamp on Officer Greenlea's body worn camera video, it pauses and the video jumps forward. This happens right at the moment that Seargent Russell is handing something to Officer Schad while Officer Greenlea is walking by Seargent Russell and Officer Schad. It is obvious that the video has been edited to remove some content that Officer Greenlea's body worn camera had recorded. Body worn camera videos should play continuously without any pauses or skips. Rayshawn Batiste was charged with Possession of a Controlled Substance and taken to jail after Officer Schad finally allegedly found the marked bill, a twenty dollar bill, out of $260.00 in twenty dollar bills seized from Plaintiff's pocket. Plaintiff had to post a bond and hire an attorney to defend the charge. *See Plaintiff's Exhibit 1*

14. On March 9, 2023, a jury trial commenced in the 178th District Court of Harris County. Defense counsel filed a motion to suppress the evidence because of an illegal detention, illegal search and illegal seizure of Rayshawn Batiste's personal property and his person. The motion was carried along with the trial. Twelve jurors saw the body worn camera video of Rayshawn Batiste being searched. Defense counsel requested for the trial judge to order prosecutors to blur the genitals and buttocks of Plaintiff, however the jury still were able to see Plaintiff's genitals and buttocks. *See Plaintiff's Exhibit 1*

15. The jury saw video footage of Rayshawn Batiste's penis, pubic hair and his buttocks. This same video also was seen by employees of the Houston Police Department and employees of the Harris County District Attorney's Office, as well as staff of the 178th District Court, including the presiding judge. *See Plaintiff's Exhibit 1*

16. After Officer Rahimzadeh and Officer Greenlea testified, the presiding judge watched Officer Greenlea's body worn camera video during a break and she was ready to hear argument on the motion to suppress. Defense counsel argued the motion to suppress to the Court, the judge found that the detention, search and arrest of Rayshawn Batiste exceeded the scope of reasonable suspicion, there was no probable cause, the officer's conduct was illegal and the judge granted the motion to suppress evidence. *See Plaintiff's Exhibit 2* The State immediately dismissed the case against Rayshawn Batiste. *See Plaintiff's Exhibit 3*

17. Defendants, Seargent D. Russell, Officer Rahimzadeh, Officer Greenlea, and Officer Donovan along with Officer Dylan Schad, intentionally and wrongfully subjected Rayshawn Batiste to public humiliation and they violated his rights under the Texas and United States Constitution.

## ARGUMENT

### I. Legal Standard

18. A complaint should only be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the complaint, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007)(quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004)). A complaint need not contain "detailed factual allegations" so long as the allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### II. Plaintiff adequately and plausibly alleges claims that violate the Fourth and Fourteenth

**Amendments of the United States Constitution to support his §1983 claim.**

19. Plaintiff has pled very specifically in his First Amended Complaint how the Defendants violated his constitutional rights guaranteed by the Fourth and Fourteenth Amendments. Defendants willfully conducted an unreasonable search of Plaintiff without probable cause and without a warrant or any exceptions, Defendants unlawfully arrested Plaintiff for delivery of a controlled substance leading to Plaintiff facing 25-99 years in prison, and the Defendants were very aware of the well-established right for Plaintiff to be free from unreasonable searches, seizures and unlawful arrests. The state court granted Plaintiff's motion to suppress all evidence during trial after some testimony from Officer G.R. Greenlea and Officer F. Rahimzadeh based on Defendants having no probable cause to search Plaintiff or Plaintiff's person.

## III. Defendants Are Not Entitled to Qualified Immunity.

20. Defendants Sgt. D. Russell and F. Rahimzadeh cannot avail themselves of qualified immunity for their actions, because they each violated Mr. Batiste's clearly established constitutional rights under the Fourth and Fourteenth Amendment.

### A. The Defense of Qualified Immunity Is Not Appropriately Brought in A Motion To Dismiss, But Defendants Must Instead Plead The Affirmative Defense of Qualified Immunity In Their Answer.

21. The Fifth Circuit has held that "we will no longer insist that a plaintiff fully anticipate the [qualified immunity] defense in his complaint at the risk of dismissal under Rule 12." *Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir. 1995). Indeed, Texas courts have interpreted *Schultea* as requiring the defense of qualified immunity to be brought in an answer, and not a motion to dismiss under 12(b)(6). "As is well established in this Court, while the affirmative defense of qualified immunity was previously permitted to be brought to the Court's attention via a Rule 12(b)(6) motion to dismiss, *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995), now requires a defendant to

assert such immunity via the filing of an answer." *Johnson v. Anderson*, No. CIV.A.4:03-CV-1355-Y, 2004 WL 1908212, at *1 (N.D. Tex. Aug. 25, 2004)(dismissing defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the basis of qualified immunity without prejudice to defendant's right to later assert the defense); *see also Pena v. Dallas Cty., Hosp. Dist.*, No. 3:12-CV-439-N, 2013 WL 11299229, at *4 (N.D. Tex. June 26, 2013) ("[i]n the Court's view, however, a defendant in the Fifth Circuit must assert qualified immunity in an answer, not a motion"); *Kremelberg v. Keeling*, No. 3:15-CV-3695-K-BH, 2016 WL 7744408, at *4 (N.D. Tex. Dec. 12, 2016)("because [defendant] raised his qualified immunity defense in a motion to dismiss, the motion should be denied on this basis without prejudice").

22.     *Schultea* also expressly adopted the potential for district courts to require a Federal Rule of Civil Procedure 7 reply to the defense of qualified immunity, if deemed necessary. *Schultea,* 47 F.3d at 1431–33.  That adoption only makes sense if the defendant is required to file the defense in an answer, because Rule 7(a) is predicated on the filing of an answer, not a motion.  The rule provides that a court may "order a reply to an answer or a third-party answer." Fed. R. Civ. P. 7(a). Indeed, lower courts have held that a *Schultea* reply requires the filing of an answer.  *See, e.g., Washington v. Louisiana Dep't of Pub. Safety & Corr.,* No. CIV.A. 04-2314, 2004 WL 2984294, at *1 (E.D. La. Dec. 6, 2004)("the Court also notes that the record reveals that [defendant] has not filed an answer raising the defense of qualified immunity, so a *Schultea* reply is not appropriate"); *Pena,* 2013 WL 11299229 at *4 (because "Rule 7(a)…permits a court to allow a reply to an answer—not a motion," then a defendant "must assert the [qualified immunity] defense in an answer"). Accordingly, Defendants must raise their qualified immunity defense in their answer, not in the instant motion to dismiss.

**B. Defendants Erroneously Characterize The Burden As To Qualified Immunity At the Motion To Dismiss Stage—Plaintiff Need Only Meet the Requirements of Rule 8.**

23.     Defendants attempt to heighten Plaintiff's burden of proof, erroneously arguing that they need only plead qualified immunity and the burden shifts to Plaintiff to demonstrate otherwise. That may be true at the summary judgment stage, but there is no burden of proof on Plaintiff at the motion to dismiss stage. Indeed, Defendants rely exclusively on cases decided at the summary judgment stage of litigation in their effort to improperly shift the burden onto Plaintiff. *See, e.g*, *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633–34 (5th Cir. 2000)("our well established summary judgment jurisprudence clearly shows…"); *Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir. 1987)(reviewing dismissal on summary judgment). Those cases are inapposite here, at the pleading stage of this litigation.

24.     To the contrary, the United States Supreme Court has held that in a § 1983 action against a public official whose position might entitle him to qualified immunity, the burden is on the defendant to plead good faith as an affirmative defense. *Gomez v. Toledo*, 446 U.S. 635 (1980). Similarly, the Fifth Circuit has held that "when, as here, a qualified immunity defense is asserted in an answer or motion to dismiss, 'the district court must'—as always—do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir.2016)(quoting *Shultea*, 47 F.3d 1427).[1] The burden rests with the Defendant claiming qualified immunity to demonstrate it is proper. *O'Bryant v. Walker Cty.*, No. CIV.A. H-08-1880, 2009 WL 212933, at *5 (S.D. Tex. Jan. 29, 2009)(denying claim of qualified immunity at motion to dismiss stage because defendant "has not met his burden to demonstrate that Plaintiff can prove no set of facts to overcome a qualified immunity defense"); *Martone v. Livingston*, No. 4:13-CV-3369, 2014 WL 3534696, at *4 (S.D. Tex. July 16, 2014)("in

the context of a motion to dismiss, the plaintiff's burden is discharged" as long as the complaint contains facts "which, if true, would overcome the defense of qualified immunity"). As explained *infra*, Plaintiff has pled facts sufficient to conclude that Defendants are not entitled to qualified immunity for their unconstitutional, unreasonable actions. Accordingly, their motion should be denied.

**C. Defendants Sgt. D. Russell and F. Rahimzadeh Cannot Avail Themselves of Qualified Immunity Because They Acted Unreasonably In Violating Mr. Batiste's Clearly Established Constitutional Rights.**

A plaintiff overcomes a qualified immunity defense by adequately pleading that:

(1) "the officer's conduct violated a constitutional right" and (2) "the right was clearly established ... in light of the specific context of the case." *Brown v. Miller*, 519 F.3d 231, 236–37 (5th Cir. 2008). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would violate that right." *Id.* Moreover, courts "look only to objective factors (what a 'reasonable officer' would have done)" and "the officer's asserted 'good faith' or lack of maliciousness is irrelevant." *Geter v. Fortenberry*, 882 F.2d 167, 169 (5th Cir. 1989). This does not require "'commanding precedent' that holds that the 'very action in question' is unlawful," only that the unlawfulness is "readily apparent from relevant precedent." *Brown*, 519 F.3d at 237.

25. Defendants each violated Mr. Bautiste's clearly established Fourth amendment right to be free from unreasonable searches and seizures and his due process rights under the Fourteenth Amendment, and any reasonable officer would have known that such conduct was unconstitutional. Accordingly, they are not entitled to qualified immunity.

26. Defendants' actions were patently unreasonable. As a result, they are not protected by qualified immunity for their misconduct, which "directly resulted in the unjust and unconstitutional

violations of Mr. Bautiste's Fourth and Fourteenth Amendment rights in violation of his rights pursuant to 42 U.S.C. §1983."

27.     Not only did Defendants Sgt. D. Russell and F. Rahimzadeh violate Mr. Bautiste's clearly established constitutional rights, but no reasonable police officer could have believed that these actions were constitutional.

**IV.     Tort Claims**

28.     Finally, Defendants move to dismiss all of Plaintiff's common-law claims because they are barred by the independent intermediary doctrine. Defendants wrongfully asserts this doctrine as stated in the facts here as well as in the live First Amended Complaint, Plaintiff was unreasonably searched without probable cause and without a search warrant. There was no magistrate involved in Defendants wrongful actions. All other proceedings were subsequent to Defendants' unconstitutional acts of unlawful detention, unreasonable and unlawful search and illegal arrest.

29.     Regarding pleading specificity, under the Federal Rules, only "notice pleading" is required. *See* FED. R. CIV. P. 8(a) (requiring a "short and plain statement" of the claim). Scattershot, catch-all pleading, however, is highly disfavored in the federal courts. *See, e.g., Ward v. Life Investors Ins. Co. of Am.*, 383 F. Supp. 2d 882, 889 (S.D. Miss. 2005) ("[T]he Fifth Circuit has shown a distaste for complaints such as these that are essentially a shotgun approach to pleadings. . . where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick.") (internal quotations omitted).

**V.     Troy Finner**

30.     Plaintiff has no objection to the dismissal of the Tort claims against, Defendant Troy Finner pursuant to provisions of the Texas Tort Claims Act and his having no physical involvement in the incident leading to Plaintiff's constitutional rights being violated.

## CONCLUSION

Because Plaintiff has adequately and plausibly pled violations of the Fourth and Fourteenth Amendments of the United States Constitution by Defendants Sgt. D. Russell and F. Rahimzadeh, and because Defendants cannot avail themselves to qualified immunity, Plaintiff has a viable claims against the Defendants under §1983. Defendants' motion to dismiss should be denied.

WHEREFORE, Plaintiff respectfully requests that the Defendants Sgt. D. Russell and F. Rahimzadeh's Motion to Dismiss be DENIED and in the alternative, that Plaintiff be granted the opportunity, if the Court intends to grant the motion to dismiss, for leave to amend to state the allegations of fact more clearly and in greater detail and abundance, and Plaintiff further requests all other and further relief to which he may be justly or equitably entitled.

Respectfully submitted,

By:/s/ *André A. Wheeler*
André A. Wheeler
State Bar No: 24042341
Federal Bar No.: 610759
P. O. Box 682705
Houston, TX 77268
(713) 660-9619 Phone
(281) 715-4627 Fax
andrewheeler_esq@yahoo.com
ATTORNEY FOR PLAINTIFF

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 13, 2024, a true and accurate copy of the foregoing document was delivered to opposing counsel by electronic service in compliance with the District ECF rules.

Michelle Taylor
City of Houston Legal Department
P. O. Box 368
Houston, Texas 77001
Michelle.taylor2@houstontx.gov

*/s/André A. Wheeler*
André A. Wheeler
