United States District Court
Southern District of Texas

**ENTERED**

January 29, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RAYSHAWN BATISTE, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:24-cv-00368 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before this Court is City of Houston's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b). (Doc. No. 20). Rayshawn Batiste ("Plaintiff") responded in opposition. (Doc. No. 26). Defendant filed a reply in support. (Doc. No. 30). Having considered the motion and the relevant pleadings, the Court **GRANTS** the motion. (Doc. No. 20).

## I.    Background

Plaintiff brings this 42 U.S.C. § 1983 and state-law tort action against Defendant, among others, for alleged violations of his constitutional rights. (Doc. No. 12). These alleged violations arise from an undercover narcotics operation, during which an undercover officer approached a non-party suspect near a store, seeking to purchase cocaine. (*Id.* at 5). That suspect, Brandon Dunbar, responded affirmatively, so the officer gave him a marked twenty-dollar bill. (*Id.*). The suspect then entered the store, at which point he was observed briefly conversing with Plaintiff, who had entered the store before the officer and her team arrived at the scene. (*Id.* at 6). Plaintiff then left the store, and soon thereafter, so did the suspect. (*Id.*). The suspect then gave the officer cocaine, prompting his arrest. (*Id.*). By this time, Plaintiff was already walking away from the store, but he turned around to observe the commotion. (*Id.*). At that point, another officer called out to Plaintiff, approached him, and detained him. (*Id.*). Plaintiff was then taken back near the

store to a marked police vehicle. (*Id.*). Plaintiff alleges that he was "immediately strip searched" in public and that the whole search was recorded on body camera footage.[1] (*Id.* at 6–7).

Even after a thorough search of his person and personal belongings for "over twelve and half minutes," Plaintiff alleges that the officers could not find the marked bill the undercover officer gave to the suspect. (*Id.* at 8). Nevertheless, the officers did not release Plaintiff. Instead, Plaintiff alleges, two officers conspired to plant a marked twenty-dollar bill, out of the view of the body camera, into a stack of cash retrieved from Plaintiff's pocket during the search. (*Id.* at 8). He further alleges that the body camera footage was altered because the video "pauses and . . . jumps forward . . . right at the moment Seargent [sic] Russell is handing something to Officer Schad." (*Id.* at 8–9). Plaintiff was charged with possession of a controlled substance and jailed.[2] (*Id.* at 9). For these alleged violations of his constitutional rights, Plaintiff has sued Defendant under § 1983 for its custom, policy, or practice that allegedly caused those violations and for failure to train and under the Texas Tort Claims Act. (Doc. No. 12).

## II.    Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing

---

[1] According to Plaintiff, after the alleged strip-search video was shown to the jury, the judge in Plaintiff's state criminal proceeding suppressed the body camera footage, finding that the detention, search, and arrest of Plaintiff exceeded the scope of reasonable suspicion and that there was no probable cause. (Doc. No. 12 at 10). The state court's order does not make these findings, but it clearly granted Plaintiff's motion based on these contentions.

[2] The charges against Plaintiff were dismissed by the state court based upon a motion by the prosecution. (*Id.*).

*Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.    Analysis

Defendant argues in its motion that Plaintiff has not sufficiently alleged municipal liability under *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978), and his failure-to-train claim; and that the state-law tort claims are barred by governmental immunity. The Court takes these in turn.

### A. Municipal Liability under *Monell*

Municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). In turn, there are three ways of establishing a municipal policy for establishing liability under *Monell*: (1) a plaintiff can show written policy statements, ordinances, or regulations; (2) a plaintiff can show a widespread practice that is so common and well-settled as

to constitute a custom that fairly represents municipal policy; and (3) a single decision may constitute municipal policy in rare circumstances when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019). Here, Plaintiff seems to allege that a written policy and a well-settled, widespread practice constitute the policies that caused the violation of his rights. These are taken in turn.

### i.      Written Policy

Plaintiff invokes several written policies: Section 400-28, *Body Worn Cameras*, Section 500-01, *Effecting Arrests*, and Section 600-24, *Deconflicting Covert and Narcotics Related Operations*. (Doc. No. 12 at 19–20). He also alleges that a policymaker promulgated these policies: the former Police Chiefs Art Acevedo and Troy Finner. (*Id.* at 19–20); *see Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010) ("We agree with the district court that the General Orders promulgated by the police chief sufficed to be the 'more' that is needed to prove policymaking authority in these circumstances.").

So far, he has satisfied the first two prongs he needs to succeed, but Plaintiff fails on the third. Plaintiff contends that "Seargent [sic] Russell was not wearing a body worn camera or . . . it was also not activated as mandated by Section 400-28," and that "[t]here were also violations of sections 500-01 . . . and 600-24." (*Id.* at 19–20). That is, he contends that it was the *violation* of these policies that led to the constitutional tort, not their enforcement.[3] To impose municipal liability under *Monell*, however, the implementation or execution of a policy—not a violation thereof—must be the source of or the "moving force" behind the constitutional tort. *Monell*, 436

---

[3] To add, these policies are not in the record for the Court to determine whether their enforcement would, in fact, lead to constitutional violations. Nevertheless, Plaintiff does not make this argument.

4

U.S. at 690, 694. Therefore, Plaintiff has failed to properly plead that the written policies promulgated by a policymaker was the cause of the violation of his constitutional rights.

### ii.       Well-Settled, Widespread Practice

"In the alternative," Plaintiff contends that "the City of Houston's formal and informal actions in overlooking, hiding, and/or tacitly encouraging officer misconduct through the General Order of the Houston Police Department . . . reflect a policy, practice[,] custom and procedure authorizing and allowing the use of actions that violated" Plaintiff's constitutional rights.[4] (Doc. No. 12 at 20). Under this theory, too, Plaintiff's *Monell* claim does not survive the motion to dismiss.

"A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow*, 614 F.3d at 169. That is, "[p]roof of a single instance of unconstitutional activity is not sufficient for § 1983 municipal liability." *Valentine Found. v. Uphoff*, 211 F. App'x 276, 278 (5th Cir. 2006) (citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). Thus, "to survive a motion to dismiss on an unconstitutional unwritten policy or customary-practice claim, a plaintiff must plead sufficient facts to allow the reasonable inference that there was a 'pattern of misconduct.'" *Vouchides v. Houston Cmty. Coll. Sys.*, No. H-10-2559, 2011 WL 4592057, at *12 (S.D. Tex. Sept. 30, 2011) (Rosenthal, J.). "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth, Tex.*,

---

[4] The Court is unsure which General Order Plaintiff is contending overlooks, hides, or encourages officer misconduct. It could be argued that, if such a General Order existed, it would effectively equate to a written policy. Reading the Complaint in the light most favorable to Plaintiff, however, the Court interprets Plaintiff's allegations to mean that Defendant, either with or without an express General Order, overlooks, hides, and tacitly encourages officer misconduct as a matter of well-settled, widespread practice.

588 F.3d 838, 851 (5th Cir. 2009) (cleaned up). It also requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *Id.*

Plaintiff fails to carry his burden twice over. First, his First Amended Complaint is devoid of any factual allegations of prior unconstitutional activities by Defendant, let alone any that indicate a pattern. Second, Plaintiff's attempt to backfill his complaint via his response to the motion, listing four instances of alleged misconduct in 2002, 2007, and 2008, is unavailing. He maintains that in 2007, 2008, and twice in 2002, officers from the Houston Police Department detained and/or searched individuals without reasonable suspicion or probable cause.[5] (Doc. No. 26 at 8–9). Aside from Plaintiff's failure to amend his pleadings to add these allegations, past instances of searches and seizures without reasonable suspicion or probable cause do not reflect a pattern of overlooking, hiding, and/or tacitly encouraging officer misconduct—they are different kinds of "bad" acts. *See Peterson*, 588 F.3d at 851 ("[P]rior indications cannot simply be for any and all 'bad' or unwise acts."). Indeed, far from suggesting that Defendant overlooked, hid, or encouraged such misconduct, two out of the four listed instances specifically state that the involved officers were disciplined, fired, or even put on criminal trial. (Doc. No. 26 at 8–9) ("[D]ozens of officers were disciplined, some were fired, and one HPD Officer—the alleged ringleader—was put on criminal trial."). If anything, this seems to show that Defendant *does* discourage such misconduct.

Moreover, Plaintiff could only identify four instances of allegedly wrongful conduct between 2002 and now—over two decades later. That, without more, is insufficient to demonstrate a pattern. In *Peterson v. City of Fort Worth, Tex.*, the Fifth Circuit held that 27 incidents of excessive force within a four-year period was insufficient to prove a pattern because "the plaintiffs

---

[5] While Plaintiff neither points to a specific source nor submits any supporting documentation, for the purposes of this analysis, the Court assumes these allegations to be true.

have failed to prove context that would show a pattern of establishing a municipal policy." 588

F.3d at 851. The court there wrote:

> For example, the record does not indicate the size of the Fort Worth Police
> Department or how many arrests were made by the department between 2002 and
> 2005. We have previously indicated that the size of a police department may be
> relevant to determining whether a series of incidents can be called a pattern. *Pineda*
> [*v. City of Houston*], 291 F.3d [325,] 329 ("Eleven incidents each ultimately
> offering equivocal evidence of compliance with the Fourth Amended cannot
> support a pattern of illegality in one of the Nation's largest cities and police
> forces."). Although the record omits any evidence of the department's size or the
> number of its arrests, the department's own website indicates that it presently
> employs more than 1,500 officers, and that there were more than 67,000 incidents
> of crime in the last year alone. Given the department's size, and absent any evidence
> of its total number of arrests during the same time period, 27 incidents of excessive
> force over a period of four years do not reflect a pattern . . . .

*Peterson*, 588 F.3d at 851–52. If 27 incidents over four years are insufficient, the four incidents

over 22 years alleged here fall woefully short—especially given the lack of specificity regarding

the other relevant factors, such as the department's size and the crime rate.[6] Thus, Plaintiff has

failed to plead a pattern of misconduct.

## B. Failure to Train

Plaintiff also alleges that Defendant failed to properly train its officers. (Doc. No. 12 at 22–

24). "A claim for failure to train must allege sufficient facts to show that (1) the municipality

adopted inadequate training policy procedures, (2) acted with deliberate indifference in doing so,

---

[6] It should be noted that the pleadings here do not at all mention the size of the Houston Police Department or how many arrests were made between 2002 and 2008, the period during which the past instances of alleged wrongful conduct occurred. As an aside, the department's own website (available at: https://www.houstontx.gov/police/department_reports/operational_summary/NIBRS_MonthlyOperationalSummary.pdf (last visited on December 30, 2024)) indicates that in 2024, there were 43,060 arrests and 154,787 citations, with 65,360 crimes against persons, 126,916 crimes against property, and 13,347 crimes against society. It also indicates that the department employs 5,250 officers. In short, this past year, the Houston Police Department faced a greater number of encounters and employed a greater number of officers than the Fort Worth Police Department did in *Peterson*. Thus, Plaintiff alleges fewer incidents of past allegedly-unconstitutional conduct, against a bigger police department facing more crime, over a longer time frame than the *Peterson* plaintiff did. This fails to establish a pattern for municipal liability under *Monell* and *Peterson*. While the Court acknowledges that the numbers in the 2002–2008 period probably differ from these 2024 figures, the Court cites the 2024 figures solely to highlight the deficiencies in Plaintiff's Complaint.

and (3) the inadequate training policy directly caused the plaintiff's injury." *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015). "'Deliberate indifference' in a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62.

Plaintiff's Complaint is devoid of factual allegations on this issue, relying solely on conclusory statements. Thus, it cannot survive this motion to dismiss. Plaintiff simply asserts that "[b]y failing to appropriately discipline, supervise, or train [officers] . . . [Defendant] authorized or ratified its Officers' wrongful acts," (Doc. No. 12 at 23); "[t]he City of Houston and Houston Police Department had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others," (*Id.*); and Defendant's "failure to train these involved Officers[] constitutes gross negligence and/or deliberate and conscious indifference to the rights, safety, and welfare of others," (*Id.* at 23–24). Not only are these mere legal conclusions, not factual contentions, but they are also less than even bare recitation of the elements of the cause of action. *See Twombly*, 550 U.S. at 555. The Complaint fails to allege what training procedures Defendant adopted and how those were inadequate. It also fails to allege facts supporting his allegation that the policymakers had notice of the inadequacies of the training procedures to constitute deliberate indifference. Lastly, it fails to allege how those

8

deficiencies "directly" caused the injury. Consequently, Defendant's motion to dismiss Plaintiff's failure-to-train claim is granted.

### C. Texas Tort Claims Act

Plaintiff brings two state-law tort claims against this Defendant: false imprisonment and intentional infliction of emotional distress. (Doc. No 12 at 24–26). The Texas Tort Claims Act governs governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.025. While it waives governmental immunity for some claims, *see id.* at § 101.021, it expressly retains some for others, including for claims "arising out of assault, battery, false imprisonment, or any other intentional tort," *id.* at § 101.057(2). Plaintiff's tort claims are for intentional torts. As such, Plaintiff's state-law tort claims against Defendant must be dismissed.

### IV.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. (Doc. No. 20). All claims against the City of Houston are dismissed.

Signed on this 28th day of January 2025.

Andrew S. Hanen
United States District Judge