United States District Court
Southern District of Texas
**ENTERED**
January 29, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RAYSHAWN BATISTE, § | |
| § | |
| *Plaintiff,* § | |
| VS. § | CIVIL ACTION NO. 4:24-cv-00368 |
| § | |
| CITY OF HOUSTON, *et al.,* § | |
| § | |
| *Defendants.* § | |

## ORDER

Pending before this Court is Officer F. Frolik (f/k/a Rahimzadeh) ("Officer Frolik") and Sergeant D. Russell's ("Sergeant Russell") (collectively, "Movants"[1]) Motion to Dismiss Plaintiff's First Amended Original [sic] Complaint. (Doc. No. 19). Rayshawn Batiste ("Plaintiff") responded in opposition. (Doc. No. 27). Movants filed a reply. (Doc. No. 31). Having considered the motion and the relevant pleadings, the Court **GRANTS IN PART** and **DENIES IN PART** Movants' motion. (Doc. No. 19).

### I. Background

Plaintiff brings this 42 U.S.C. § 1983 and state-law tort action against Defendants, among others, for alleged violations of his constitutional rights. (Doc. No. 12). These alleged violations arise from an undercover narcotics operation, during which undercover Officer Frolik approached a non-party suspect near a store, seeking to purchase cocaine. (*Id.* at 5). That suspect, Brandon Dunbar, responded affirmatively, so Officer Frolik gave him a marked twenty-dollar bill. (*Id.*). The suspect then entered the store, at which point he was observed briefly conversing with Plaintiff, who had entered the store before Officer Frolik and her team arrived at the scene. (*Id.* at 6). Plaintiff

---

[1] Plaintiff has sued four law enforcement officers, but only two—Officer Frolik and Sergeant Russell—have joined in the present motion. For the sake of clarity, the Court will refer to Officer Frolik and Sergeant Russell collectively as "Movants" and all four co-defendant officers as "Defendants."

then left the store, and soon thereafter, the suspect returned. (*Id.*). The suspect gave Officer Frolik the cocaine, prompting his arrest. (*Id.*). By this time, Plaintiff was already walking away from the store, but he turned around to observe the commotion. (*Id.*). After other officers detained the suspect, Officer Greenlea—a co-defendant, but not joined in this motion—called out to Plaintiff, approached him, and detained him. (*Id.*). Plaintiff was then taken back near the store to a marked police vehicle. (*Id.*). Plaintiff alleges that he was "immediately strip searched" in public by Officer Greenlea and that the whole search was recorded on body camera footage.[2] (*Id.* at 6–7).

Even after a thorough search of his person and personal belongings for "over twelve and half minutes," Plaintiff alleges that the officers could not find the marked bill Officer Frolik gave to the suspect. (*Id.* at 8). Nevertheless, the officers did not release Plaintiff. Instead, Plaintiff alleges, Sergeant Russell and Officer Schad—another co-defendant, but not joined in this motion—planted a marked twenty-dollar bill, out of the view of the body camera, into a stack of cash retrieved from Plaintiff's pocket. (*Id.* at 8). He further alleges that the body camera footage was altered because the video "pauses and . . . jumps forward . . . right at the moment Seargent [sic] Russell is handing something to Officer Schad." (*Id.* at 8–9). Plaintiff was charged with possession of a controlled substance, jailed, and eventually brought to trial.[3] (*Id.* at 9). For these alleged violations of his constitutional rights, Plaintiff has sued Defendants in their individual capacities. (Doc. No. 12).

---

[2] According to Plaintiff, the court in Plaintiff's state criminal trial suppressed the body-camera footage, finding that the detention, search, and arrest of Plaintiff exceeded the scope of reasonable suspicion and there was no probable cause. (Doc. No. 12 at 10). The actual order did not make these findings, but it clearly granted Plaintiff's motion based on these contentions. The dismissal, however, apparently occurred after the jury saw the alleged strip-search video.

[3] Intra-trial, the case against Plaintiff was dismissed on a motion made by the State. (*Id.*).

2

## II. Legal Standard

Movants filed this Rule 12(b)(6) motion to dismiss on several grounds: (1) Plaintiff failed to plead sufficient facts to support his claims; (2) Movants are entitled to qualified immunity; and (3) the Texas Tort Claims Act bars Plaintiff's state-law claims against them.

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). A court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

**III.    Analysis**

Plaintiff asserts a § 1983 claim for violations of the Fourth Amendment for unreasonable search and seizure and of the Fourteenth Amendment for fabrication of evidence, and a common-law tort claim of false imprisonment.[4] He further contends that Defendants "individually saw the illegal search and seizure of [Plaintiff] and either directly participated or chose not to intervene to prevent the illegal search, illegal seizure, fabricated evidence, and illegal arrest." (Doc. No. 12 at 12). Movants argue in their motion that (1) Plaintiff failed to state a claim for which relief can be granted, (2) they are entitled to qualified immunity, and (3) the tort claim should be dismissed under the Texas Tort Claims Act. Movants do not contest their personal involvement or their exposure to the so-called "bystander liability," whereby an officer may be liable under § 1983 if he or she "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[5] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Thus, in this Rule 12(b)(6) motion-to-dismiss context, the Court takes Plaintiff's contention as true that both Officer Frolik and Sergeant Russell either directly participated or were aware of and chose not to intervene to prevent alleged violations of Plaintiff's constitutional rights even though they had a reasonable opportunity to do so. (Doc. No. 12 at 12). Movants' arguments are taken in turn.

---

[4] In passing, Plaintiff mentions in his Amended Complaint that Defendants used "excessive force." (Doc. No. 12 at 12). He does not, however, plead any factual basis to support the proposition that the alleged force used by Defendants was excessive, and his Response to this motion omits entirely any references to excessive force. Thus, the Court finds that any excessive-force claims are not properly pleaded and, to the extent they exist at all, should be dismissed.

[5] Movants do recite the rule that "[a] defendant's personal involvement is an essential element of a § 1983 claim." (Doc. No. 19 at 14) (citing *Villegas v. City of El Paso*, EP-15-00386-FM, 2020 WL 981878, at *4 (W.D. Tex. Feb. 28, 2020)). They do not, however, point out how Plaintiff insufficiently pleaded the personal-involvement or bystander-liability elements. The mere recitation of the rule on personal involvement is insufficient to raise this argument. Additionally, as noted above, the Court must assume the truth of Plaintiff's allegations. Thus, the Court assumes for the purposes of this Order that Movants were either personally involved or qualify as bystanders under the bystander-liability doctrine.

### A. Failure to State a Claim

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Here, Plaintiff seems to allege that (1) the seizure of Plaintiff's person was unreasonable; (2) the search, including the alleged strip search, was unreasonable; and (3) the "fabricated evidence of a tampered body worn camera video and an alleged marked twenty dollar bill allegedly found on Plaintiff's person[] violated Plaintiff's due process rights under the . . . Fourteenth Amendment[] of the United States." (Doc. No. 12 at 11). In Movants' motion, they first argue that the search and seizure were supported by probable cause and reasonable. (Doc. No. 19 at 16–19). Second, Movants contend that, even if they were not, the independent intermediary doctrine insulates them from liability as a matter of law. (*Id.* at 20). Third, they argue that the Fourteenth Amendment Due Process Clause does not apply here because a more specific constitutional provision—the Fourth Amendment—is the basis of Plaintiff's constitutional right, not the more generalized notion of due process found in the Fourteenth Amendment. (*Id.* at 15).

#### i.   The Reasonableness of the Seizure

It is well-settled law that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013).

Under Plaintiff's proffered facts, Movants had probable cause to believe Plaintiff had participated in a crime. Plaintiff concedes that the suspect in the undercover narcotics operation, after being asked to sell cocaine and taking the cash for it, instead of immediately completing the illicit transaction, entered the corner store where Plaintiff was and interacted with Plaintiff. (Doc. No. 12 at 5). After the suspect interacted with Plaintiff, the suspect "exited the store and gave crack cocaine" to Defendant Officer Frolik. (*Id.* at 6). These facts gave sufficient "probability . . . of criminal activity" so that a reasonable person would be warranted in believing that Plaintiff had committed a felony. *See Curtis*, 710 F.3d at 595; *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). The intervening encounter between the suspect and Plaintiff—especially immediately after an undercover officer sought to purchase and paid for the cocaine, followed by the provision of the cocaine—gave rise to a probability of criminal activity. Moreover, that Officer Frolik could only see from Plaintiff's and the suspect's shoulder and up does not negate probable cause because "an actual showing of such activity" is not required. *See Curtis*, 710 F.3d at 595. Thus, Movants had probable cause to detain Plaintiff, making the eventual arrest constitutionally sound.[6] The Court also notes that, subject to the qualification noted in footnote five, the two Movants were not actually the arresting officers. Plaintiff's unreasonable-seizure claims against Movants are therefore dismissed.

---

[6] The state trial court's exclusion of the evidence in the criminal trial—based on Plaintiff's contention that the officers lacked probable cause—does not affect this Court's conclusion:

> In determine whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

*Elkins v. United States*, 364 U.S. 206, 223–24 (1960). The Court also notes that the state court did not give reasons for granting the motion to suppress, but the basis for the motion itself was for lack of probable cause. *See* (Doc. No. 27-1).

### ii.   The Reasonableness of the Search

Following or as a part of a lawful arrest, an officer may search the arrestee under the well-recognized doctrine of "search incident to arrest." *See United States v. Robinson*, 414 U.S. 218, 235 (1969); *United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994). The scope of such a search is broad: "[I]n the case of a lawful custodial arrest[,] a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable search' under that Amendment." *Robinson*, 414 U.S. at 235. Nevertheless, the Supreme Court has cautioned that the scope of a search is not limitless. Rather, the governmental interests supporting the search must be balanced with the invasiveness. *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983). Thus, the court "must consider [1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Here, the officers clearly had the right, if not the duty, to search Plaintiff, but that, in and of itself, does not resolve the "strip search" issue.

Plaintiff alleges that he was "strip searched for minutes." (Doc. No. 12 at 6). Movants, on the other hand, dispute that characterization of events, contending that "Plaintiff's waistline, rear end, and groins [sic] area were searched . . . by simply stretching the waistline of the pants and observing these areas through the use of a flashlight." (Doc. No. 19 at 7). To support their respective contentions, both sides have submitted the body-camera footage of the search. *See* (Doc. Nos. 19-9 and 28). Ordinarily, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Nevertheless, "documents [and videos] that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Carter v. Target Corp.*, 541 F. App'x 413, 416

7

(5th Cir. 2013) (citing *id.*). Here, Plaintiff references the video numerous times in the Complaint and makes it central to his claims, (Doc. No. 12 at 7, 9, and 10), and Movants have attached it in their motion to dismiss, (Doc. No. 19-9). Moreover, far from contesting the Court's consideration of the video, Plaintiff, himself, also urges the Court to consider the video in ruling on the present motion. (Doc. No. 27 at 4–5). Thus, the Court may properly consider the video and does so.

The video, although depicting a somewhat lengthy and thorough search, does not show a strip search. Instead, it shows the officer conducting the following search of Plaintiff's person. The officer: (1) pats down Plaintiff's left pocket, (Doc. 19-9 at 3:11); (2) visually inspects Plaintiff's groin area by pulling on his waistband, lasting no more than five seconds and not showing his genitalia on his body camera, let alone to the public, (*id.* at 3:14); (3) reaches into Plaintiff's left pocket and removes its contents, (*id.* at 3:19); (4) examines Plaintiff's hat, which was already on the hood of the police vehicle, (*id.* at 3:35); (5) tugs on and shakes various parts of Plaintiff's pants, presumably to shake out any potential weapons or sachets of drugs, (*id.* at 3:52); (6) pulls on the rear waistband of Plaintiff's underwear to visually inspect the area, lasting no more than two seconds, but making his buttocks visible on the body-camera footage, (*id.* at 3:58); (7) looks into Plaintiff's right pocket and removes a wad of cash, among other belongings, (*id.* at 4:03); (8) visually inspects Plaintiff's buttocks for the second time by pulling on the waistband, lasting no more than three seconds and, again, showing Plaintiff's buttocks in the footage, (*id.* at 4:53); (9) instructs Plaintiff to remove his shoes and inspects them, (*id.* at 5:05); (10) grabs and shakes the front of Plaintiff's groin area of Plaintiff's pants, though it is unclear what the officer was touching at the time, (*id.* at 5:38); (11) removes Plaintiff's socks and inspects his feet and socks, (*id.* at 5:50); (12) examines Plaintiff's pockets and pats him down, (*id.* at 6:18); (13) visually inspects Plaintiff's groin area for the second time by pulling out his waistband, lasting no more than 4 seconds, and

showing no part of his genitalia, (*id.* at 6:36); and (14) grabs, for the second time, Plaintiff's pants in the groin area and shakes them, for two to three seconds, (*id.* at 6:40).

The video is clear that the only clothing that could be considered as being stripped off were Plaintiff's shoes and socks. *Cf. Mabry v. Lee Cnty.*, 849 F.3d 232, 234 n.1 (5th Cir. 2017) ("For purposes of uniformity, we call any search in which an inmate is made to remove clothes a 'strip search.'"). Weighing Plaintiff's privacy interest in not exposing his feet to the public against the government's interest in finding concealed drugs or the marked bill, the Court finds that the search—even if described by Plaintiff as a "strip search"—was permissible under the Fourth Amendment.

Construed liberally, however, Plaintiff's Complaint could be read as contending that the visual inspections into his private areas and physical contact with those areas by the officer was prolonged. *See* (Doc. No. 12 at 11) (Plaintiff's Amended Complaint describing the search as "excessive, unreasonable, and unlawful"). Nevertheless, even if this search could be considered excessive, thorough, or repetitive, it was not unlawful. Moreover, as explained below, Movants, neither of whom was the officer actually conducting the search, are entitled to qualified immunity on this issue. The Court also notes that the rest of the search were reasonable, confined in scope and manner to the government interest and probable cause justifying it. *See Robinson*, 414 U.S. at 235.

### iii. The Independent Intermediary Doctrine

Movants argue that, even if the search or seizure was unreasonable, Plaintiff's claims must be dismissed under the independent intermediary doctrine. (Doc. No. 19 at 19–21). Under that doctrine, "if the facts supporting an arrest are placed before an independent intermediary such as a magistrate [or a grand jury], the intermediary's decision breaks the chain of causation for false

9

arrest, insulating the initiating party." *Buehler v. Dear*, 27 F.4th 969, 990 (5th Cir. 2022) (cleaned up). This rule applies "even if the warrant application was sought and granted after the arrest took place." *Id.* (citing *Buehler v. City of Austin/Austin Police Dept.*, 824 F.3d 548 (5th Cir. 2016))

The independent intermediary doctrine "breaks the chain of causation" for searches and seizures conducted, at the time of the search and seizure, without probable cause or reasonable suspicion, but once probable cause exists (which, in this case, it does), the doctrine does not govern the *manner* in which such search is conducted. Since the Court has found that Movants had probable cause to arrest and search, this doctrine is irrelevant.

### iv. Fabrication of Evidence

Movants argue that Plaintiff's Fourteenth Amendment fabricated-evidence claim is misplaced because "if the alleged manufactured evidence leads only to an arrest and not a trial, the plaintiff must seek recovery under the Fourth Amendment because Fourth Amendment provides protection for pre-adjudication rights." (Doc. No. 19 at 15). True, if "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Consequently, the Supreme Court in *Albright* held that the Fourteenth Amendment cannot be the basis for the plaintiff's "right to be free from prosecution without probable cause." *Id.* at 271.

First, this Court notes that Plaintiff *was* subject to a trial, even if the case was later dismissed pursuant to the state's motion. Second, the Fifth Circuit has expressly held—post-*Albright*—that the Fourteenth Amendment guarantees "a due process right not to have police deliberately fabricate evidence and use it to *frame and bring false charges* against a person." *Cole*

*v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015), *vacated sub nom*, *Hunter v. Cole*, 580 U.S. 994 (2016) (mem.), *reinstated in relevant part*, *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (emphasis added). That is, the reach of the Fourteenth Amendment Due Process Clause is broader than Movants claim and encompasses fabrication of evidence that leads to criminal charges, short of a trial.

*Cole* is illustrative.[7] There, a seventeen-year-old, Ryan, who was severely injured in an armed encounter with police, and his parents brought a § 1983 suit against individual officers for, *inter alia*, fabricating evidence. *Id.* at 755. Ryan, suffering from obsessive-compulsive disorder, had pointed a gun at his own head while walking backwards towards the police—only he did not know they were there. *Id.* at 755, 758. The police intentionally "stayed quiet so that he would not become aware of them." *Id.* at 758. Ryan "turned somewhat to his left," possibly to head towards to a drug store where his grandparents were waiting to pick him up. *Id.* At that point, the officers "opened fire without warning." *Id.* After the shooting, officers allegedly conferred and agreed to testify that the plaintiff was warned but pointed his gun at the officers so that they could "justify the use of force and avoid consequences for killing Ryan, who they believed was likely to die." *Id.* at 763. Consequently, Ryan alleged he suffered two forms of injury: (1) he was put under house arrest, and (2) he "incurred substantial legal fees in order to confront the aggravated assault charge." *Id.* at 764. Ryan and his parents brought a § 1983 suit for use of excessive force under the Fourth Amendment and for fabrication of evidence under the Fourth and Fourteenth Amendments. *Id.* at 756.

The court there held that the false arrest claim—brought properly under the Fourth Amendment, *see Albright*, 510 U.S. at 273—failed because, under Texas law, the officers had

---

[7] Notwithstanding *Cole*'s complex procedural history, "that holding [on fabrication of evidence] is binding Fifth Circuit precedent today." *Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020).

11

probable cause to arrest the plaintiff for unlawful carrying of a weapon. *Id.* at 764–65. That is, they did not violate the Fourth Amendment. Regarding the officers' alleged lying to secure a false charge of aggravated assault, however, the court held that the Fourteenth Amendment Due Process Clause provided the proper vehicle of constitutional protection: "Where [1] police intentionally fabricate evidence and successfully get someone falsely charged with a felony . . . , and [2] the Fourth Amendment is unavailing, there may be a due process violation." *Id.* at 773. That is because "[t]hough these wrongs may be addressed through a Fourth Amendment challenge in many cases, they do not disappear where there is no violation of that amendment." *Id.* at 772.

Here, too, Plaintiff's fabricated-evidence claim finds home in the Fourteenth Amendment Due Process Clause. First, Plaintiff pleads that Defendants intentionally fabricated evidence and got him charged with a felony. He alleges that Sergeant Russell, in collaboration with Officer Schad, intentionally planted a marked twenty-dollar bill in the cash taken from Plaintiff's pocket. (Doc. No. 12 at 8). He also alleges that Officer Greenlea's body camera footage was edited right at the moment of the alleged planting of the evidence, which, if true, was most likely intentional. Moreover, these alleged fabrications successfully led to Plaintiff's being charged with possession of a controlled substance, a felony under Texas law. (*Id.* at 9); *see also* TEX. PENAL CODE § 481.112.

Second, the Fourth Amendment is unavailing. As mentioned above, the seizure of Plaintiff's person was supported by probable cause. Moreover, following that lawful arrest, Defendants could, and perhaps did, lawfully search Plaintiff's pockets and belongings, including the stack of cash into which the marked bill was allegedly planted.[8] Since the search that begot the stack of cash into which the evidence was allegedly planted was lawful, the Fourth Amendment affords no protection against such conduct. Therefore, the Fourteenth Amendment Due Process

---

[8] As noted above, the searches of Plaintiff's pockets and belongings were constitutional.

protections apply here. Consequently, to the extent Plaintiff rests his fabricated-evidence claim on the Fourth Amendment, Movants' motion is granted. The claim against Movants based on the Fourteenth Amendment, however, remains.

### B. Qualified Immunity

When evaluating a defendant's qualified immunity defense at the motion to dismiss stage, a district court must find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643 (5th Cir. 2014); *see also Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 306 (5th Cir. 2020) (quoting *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016)) ("Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'"). A plaintiff seeking to rebut qualified immunity at this stage must allege: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011).

#### i.   The Procedure and Burden of Proof

In response to Movants' assertion of qualified immunity, Plaintiff puts forth two arguments: (1) qualified immunity cannot be asserted in a motion to dismiss but must be asserted in an answer; and (2) the burden rests with Movants to demonstrate qualified immunity applies, not with Plaintiff to negate it. (Doc. No. 27 at 8–10). Both are incorrect.

Plaintiff relies on *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc), to argue that "Texas [federal] courts have interpreted *Schultea* as requiring the defense of qualified immunity to be brought in an answer, and not a motion to dismiss under Rule 12(b)(6)." (Doc. No. 27 at 8) (collecting cases from the Northern District of Texas). Plaintiff's argument is that since *Schultea* "expressly adopted the potential for district courts to require a Federal Rule[s] of Civil Procedure

13

7 reply to the defense of qualified immunity . . . [t]hat adoption only makes sense if the defendant is required to file the defense in an answer." (*Id.* at 9). That reliance, however, is misplaced. In *Schultea*, the Fifth Circuit reheard en banc a panel's earlier denial in part and affirmance in part of the district court's denial of motion to dismiss on qualified-immunity grounds. *Schultea*, 47 F.3d at 1428–30. In so doing, it sought "to explain the measure by which to judge the adequacy of any amended complaint Schultea [the plaintiff] may file on remand." *Id.* at 1430. It merely held that "[*w*]*hen* a public official pleads the affirmative defense of qualified immunity in his answer, the district court may . . . require the plaintiff to reply to that defense in detail." *Schultea*, 47 F.3d at 1433 (emphasis added). Nowhere in the opinion is the insistence that a public official *must* plead qualified immunity in his answer. In fact, in *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), the Fifth Circuit held that the district court abused its discretion by refusing to rule on qualified immunity asserted in a motion to dismiss, and instead "requir[ing] [the defendants] to assert their qualified immunity by way of answer." *Id.* at 310–11. The court gave clear instructions: "Where public officials assert qualified immunity in a motion to dismiss, a district court must rule on the motion." *Id.* at 311. Thus, Plaintiff's argument that this Court must deny Movants' motion to dismiss and wait for them to assert their qualified-immunity defense in their answer fails.

Plaintiff's second argument fares no better. Plaintiff argues that "[t]he burden rests with the Defendant claiming qualified immunity to demonstrate it is proper." (Doc. No. 27 at 10). That may be true in examining the *pleadings*—that is, whether Plaintiff has pleaded more than mere conclusions. *See Schultea*, 47 F.3d at 1430 ("[W]e stand by our insistence that complaints plead more than conclusions . . . ."). Nevertheless, as countless qualified-immunity precedents make clear, "[o]nce a defendant asserts the qualified immunity defense, the plaintiff bears the burden of negating qualified immunity." *Est. of Bonilla*, 982 F.3d at 306 (cleaned up). To successfully negate

14

qualified immunity, the plaintiff must, in turn, "show that Defendants violated [his] constitutional rights" and that the asserted right "was clearly established at the time of the alleged misconduct." *al-Kidd*, 563 U.S. at 732. Thus, contrary to his contentions, Plaintiff has the burden to negate qualified immunity.

### ii. The Merits

Having concluded that Movants properly raised their qualified-immunity defense and Plaintiff has the burden of proof to negate that defense, the Court turns to the merits of the parties' arguments. Again, once the defense is raised, Plaintiff can rebut it by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 732. To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Culberson v. Clay Cnty.*, 98 F.4th 281, 286 (5th Cir. 2024) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There must be "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (internal quotes omitted).

Movants raise the affirmative defense of qualified immunity as to all of Plaintiff's constitutional claims—for unreasonable search and seizure and fabrication of evidence. (Doc. No. 19 at 22). These are taken in turn.

*Unreasonable Search and Seizure*

Plaintiff fails to rebut Movants' qualified immunity as to the unreasonable search and seizure claim because he can show neither that they violated his constitutional right nor that such right was clearly established at the time of the challenged conduct. First, as the Court already held,

Defendants' seizure of Plaintiff was warranted by probable cause and, thus, reasonable. *Supra* Part III.A.i–ii. That is, Plaintiff has not and could not show that Movants violated his constitutional right. Second, even if the seizure and the search incident to arrest was unreasonable, Movants would nonetheless be entitled to qualified immunity because Plaintiff has utterly failed to point to any authority that clearly establishes, with a high degree of particularity, that Defendants' conduct here was unlawful. Instead, he generally claims that Movants violated Plaintiff's "clearly established Fourth [A]mendment right to be free from unreasonable searches and seizures . . . and any reasonable officer would have known that such conduct was unconstitutional." (Doc. No. 27 at 11). That is insufficient to surmount the high bar of clearly-established law. Thus, Movants would be entitled to qualified immunity.

### *Fabrication of Evidence*

Plaintiff's fabricated-evidence claim, however, overcomes Movants' qualified-immunity defense at this stage. The Court has already held that Plaintiff has pleaded sufficient facts to demonstrate that the co-defendants not joined in the motion—and, in turn, Movants due to their uncontested personal involvement or bystander liability—allegedly violated his Fourteenth Amendment rights by fabricating evidence. *Supra* Part III.A.iv. The remaining question, therefore, is whether his right against such alleged infringement was clearly established. It was. As explained above, the Fifth Circuit in *Cole* made clear that the Fourteenth Amendment Due Process Clause guarantees "a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole*, 802 F.3d at 764. *Cole* was decided in 2015, almost seven years before the events giving rise to this action. Thus, if they acted as Plaintiff alleges, Movants violated the clearly established right against fabrication of evidence and, at least at this stage, are not entitled to qualified immunity on that claim.

### C. Texas Tort Claims Act

Lastly, Movants argue that Plaintiff's state-law tort claims should be dismissed under the Texas Tort Claims Act. (Doc. No. 19 at 22–23) (citing TEX. CIV. PRAC. & REM. CODE § 101.106)). The Court need not consult the Texas Civil Practice and Remedies Code to agree with Movants. While Plaintiff purports to bring a "False Imprisonment [Claim] [a]gainst Defendants, Seargent [sic] D. Russell, Officer F. Rahimzadeh, Officer Garrett Greenlea, and Officer Christopher Donovan," (Doc. No. 12 at 14), he later stipulates that "Plaintiff elects to proceed with his State law claims solely against the City of Houston, as permitted by the Texas Tort Claims Act," (*id.* at 24). Taking Plaintiff at his word, the Court concludes that Plaintiff is bringing the false imprisonment claim only against the City of Houston.

To be clear, even reading Plaintiff's Complaint liberally—and, for the moment, ignoring his own election of remedies—his tort claim cannot proceed against Movants. Section 101.106(f) states that:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f). In other words, when it applies, § 101.106(f) "mandates plaintiffs to pursue lawsuits against governmental units rather than their employees" and "entitles the employee to dismissal of the relevant tort claim." *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 159 (5th Cir. 2017).

In this case, both of the elements of government-employee immunity are met: (1) the conduct was within the general scope of Movants' employment, and (2) the tort claim could have been—and in fact was—brought against the City of Houston. First, Plaintiff admits that Movants

were acting within the general scope of their employment, writing that, "[a]t all relevant times, Defendants . . . were acting . . . under color of authority as police officers, employees, and agents or servants of the City of Houston, Texas." (Doc. No. 12 at 13). Second, in determining whether a tort claim could be brought against a governmental unit, § 101.106(f) simply asks "whether [Plaintiff's] claim sounds in tort." *Wilkerson*, 878 F.3d at 162 (citing *Anderson v. Bessman*, 365 S.W.3d 119, 126 (Tex. App.—Houston [1st Dist.] 2011, no pet.)). False imprisonment is a common-law tort. Thus, the second element is also met.[9] As required by § 101.106(f), Movants have filed this motion to dismiss. Therefore, not only did Plaintiff elect to pursue his state claims only against the City of Houston, but § 101.106(f) also compels him to do the same. As such, Movants are entitled to a dismissal of the state-law tort claims against them.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Officer Frolik and Sergeant Russell's Motion to Dismiss as to Plaintiff's Fourth Amendment unreasonable search and seizure claims and fabrication-of-evidence claim, as well as state-law false imprisonment claim. It **DENIES** their motion as to Plaintiff's Fourteenth Amendment claim for fabrication of evidence. (Doc. No. 19).

Signed on this 28th day of January 2025.

_____
Andrew S. Hanen
United States District Judge

---

[9] True, § 101.057(2) expressly preserves immunity for claims "arising out of . . . false imprisonment," TEX. CIV. PRAC. & REM. CODE § 101.057(2), theoretically making it impossible for Plaintiff to bring his false imprisonment claim "under this chapter against the government unit." Nevertheless, the Supreme Court of Texas has made clear that "any tort claim against the government is brought 'under' the [Texas Tort Claims] Act for purposes of section 101.106, even if the Act does not waive immunity." *Franka v. Velasquez*, 332 S.W.3d 367, 375 (Tex. 2011).